WILLIAM AND ALICE BALL, Petitioners v. RANDOLPH COUNTY BOARD OF ADJUSTMENT, Respondent

No. COA97-721

(Filed 21 April 1998)

**1. Zoning § 121 (NCI4th)— review of Board of Adjustment by trial court—verbatim transcript not reviewed—no error**

The trial court did not err by not reviewing the verbatim transcript of the Zoning Board of Adjustment's proceedings where the question was whether a certain use was permitted within a zoning district, which is a question of law subject to a *de novo* review, and the Board conceded in its brief that the trial court in its appellate function could determine from other parts of the record that the Board's findings were an error of law. The Court of Appeals was not inclined to go behind the trial court's recital that it considered the "whole record" in making its determination.

**2. Zoning § 47 (NCI4th)— remediation of petroleum contaminated soil—not an agricultural use**

The trial court did not err in overruling an order of the Randolph County Board of Adjustment and finding that soil remediation is a waste treatment process and not an agricultural use even though the process is sometimes referred to as "land farming" and requires turning or tilling of the soil to stimulate concentrations of microbes. No products are grown or sold and the tilling of the soil is related to a chemical process rather than to production of crops or plants.

Appeal by respondent from judgment entered 30 April 1997 by Judge Lester P. Martin, Jr. in Randolph County Superior Court. Heard in the Court of Appeals 17 February 1998.

*Wyatt Early Harris & Wheeler, L.L.P., by Thomas E. Terrell, Jr., for petitioners-appellees.*

*Gavin, Cox, Pugh and Gavin, by Alan V. Pugh, for respondent-appellant.*

WALKER, Judge.

On 8 March 1996, the petitioners and adjoining owners both owned tracts of land located in a Residential Agricultural Zoning

BALL v. RANDOLPH COUNTY BD. OF ADJUST.

[129 N.C. App. 300 (1998)]

District (RA District) under the Randolph County Zoning Ordinance. The adjoining owners were granted a permit allowing the remediation of petroleum contaminated soil. Petitioners requested a determination from the Randolph County Director of Planning and Zoning (Director) that this activity should not be allowed as it is not listed as a permitted use in an RA District under the zoning ordinance. By letter dated 10 May 1996, the Director responded that because petroleum soil remediation, also known as "land farming," is regulated by the State, the Randolph County Zoning Ordinance does not currently regulate the location of soil remediation sites.

Petitioners appealed the Director's decision to the Randolph County Board of Adjustment (Board) and a hearing was held on 8 October 1996. At the hearing, the Director advised the Board that this activity was regulated by a comprehensive permitting scheme by the State; the majority of North Carolina counties do not regulate this activity because of comprehensive regulations; and that soil remediation involves the agricultural practice of soil tilling and requires open land encompassed in areas designated as RA Districts.

The adjoining owners, in support of their argument to the Board that their property be permitted for soil remediation purposes, stated that they lived on the site in question, that horses were pastured on this site, and that the site was agrarian in use. On the other hand, the petitioners argued that soil remediation is not included in the table of permitted uses for RA Districts, that if a particular use is not enumerated in the table of uses then the zoning classification should be narrowly construed to exclude such use, and that soil remediation is not an agrarian process, but rather is industrial in nature as it is a waste treatment process.

The Board denied the petitioners' appeal, upholding the Director's decision, and issued an order finding the following: (1) the State of North Carolina, through the Division of Environmental Management, had developed regulations and permitting procedures for the treatment process known as soil remediation; (2) RA zoning is "a common district description used to define generally open agrarian land that is primarily rural and low density open land;" and (3) that "Remedial Petroleum Soil Sites, by their very nature, involve the use of open land and soil tilling." The Board then concluded that "the decision of the Randolph County Director of Planning & Zoning that the current Randolph County Zoning Ordinance does not regulate the location of remedial petroleum soil storage sites is hereby affirmed."

On 19 November 1996, the petitioners filed a writ of certiorari seeking a *de novo* review of the Board's order. The writ was issued and on 28 April 1997 a hearing was held before the Randolph County Superior Court after which the trial court entered a judgment overruling the order of the Board.

**[1]** The respondent Board first argues that the trial court erred because it did not review the verbatim transcript of the Board's proceedings in determining whether the Board's order was affected by an error of law.

In reviewing zoning decisions, the trial court sits in the posture of an appellate court and is responsible for the following:

> (1) [R]eviewing the record for errors in law; (2) insuring that procedures specified by law in both statute and ordinance are followed; (3) insuring that appropriate due process rights of a petitioner are protected, including the right to offer evidence, cross-examine witnesses and inspect documents; (4) insuring that the decisions of zoning boards are supported by competent, material and substantial evidence in the whole record; and (5) insuring that decisions are not arbitrary and capricious.

*Mize v. County of Mecklenburg*, 80 N.C. App. 279, 284, 341 S.E.2d 767, 770 (1986) (*citing Coastal Ready-Mix Concrete Co. v. Board of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980)). *See also*, N.C. Gen. Stat. § 153A-345(e) (Cum. Supp. 1997).

A trial court must use the "whole record test" when a petitioner has alleged that a Board of Adjustment has acted arbitrarily and capriciously or contrary to the evidence presented. *See CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 411 S.E.2d 655 (1992). However, the question of whether a certain use is permitted within a zoning district is a matter of interpretation and therefore is a question of law subject to a *de novo* review. *Moore v. Bd. of Adjustment for City of Kinston*, 113 N.C. App. 181, 437 S.E.2d 536 (1993).

Here, the trial court in its judgment found:

> [A]fter conducting a *de novo* review of the record as certified to the court, reviewing the issues of law and the whole record as certified to this court, and considering the arguments of counsel and legal authorities submitted by counsel, that the decision of

the Randolph County Board of Adjustment at its October 8, 1996 meeting regarding Petitioners' appeal of the Randolph County Zoning Administrator's decision regarding land farms in RA Districts was in error as a matter of law and that Petitioners' relief should be granted.

The Board concedes in its brief that "the trial court in its appellate function could determine from other parts of the record, such as the minutes of the Board's meeting and the Board's order, that the Board's findings were an error of law. . . ." Thus, we are not inclined to go behind the trial court's recital that it considered the "whole record" in making its determination that the decision of the Board was an error of law. As such, the Board's first assignment of error is overruled.

[2] The Board next argues that the trial court erred as a matter of law in concluding that the remediation of petroleum contaminated soil cannot be defined as an agricultural use and that such activity is a non-conforming use in an RA district.

We first note that while the Board was correct in finding that soil remediation is regulated by the State, we find no authority which would prohibit a county's zoning authority from deciding in its zoning ordinance where such activity can be located within the county. Thus, the trial court was correct when it stated that "land farms do not lie outside the purview of the Randolph County Zoning Ordinance. . . ."

In *Moore v. Bd. of Adjustment*, 113 N.C. App. 181, 437 S.E.2d 536 (1993), this Court upheld the Board and trial court's determination that the City of Kinston's zoning ordinance did not allow flea markets as a permitted use within the B-1 zoning district. In making this determination the Court stated:

Whether or not the flea market is a permitted use of property in the B-1 district is a matter of interpretation and, therefore, is a question of law subject to de novo review. The canons of statutory construction apply to the interpretation of an ordinance, so we must give the words in the ordinance their ordinary and common meaning. Furthermore, the words must be construed in context and given only the meaning that the other modifying provisions of the ordinance will permit. When the ordinance is interpreted in light of these canons, the phrase "stores

and shops" does not include flea markets, and flea markets are theretofore not a permitted use in the B-1 district.

*Id.* at 182, 437 S.E.2d at 537.

The Board argues that soil remediation by its very nature involves open land and tilling and therefore is consistent with the purpose of RA districts which is set forth in the zoning ordinance as follows:

The purpose of this district is to provide a place for agricultural and very low density residential uses. Land uses in this district are primarily agrarian and rural.

Although soil remediation involves open land and tilling, it does not meet the "ordinary meaning," as required in *Moore*, of agricultural activity. N.C. Gen. Stat. § 153A-340 (Cum. Supp. 1997) provides some insight as to what types of activities would reasonably be considered an agricultural use. This statute describes agricultural uses on a "bona fide farm" as follows:

Bona fide farm purposes include the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultural products having a domestic or foreign market.

The treatment of petroleum contaminated soil is a waste treatment process which is regulated by this State for reasons of public and environmental health. Contaminated soil is trucked into the soil remediation sites from a variety of locations, such as bulk petroleum storage facilities and gasoline stations. Once the soil reaches the facility, it is treated chemically by the application of nutrients which stimulates microbes in the soil to consume contaminants. This process requires the turning or tilling of the soil to stimulate the concentrations of microbes.

Although sometimes referred to as "land farming," soil remediation does not fit within the above description of agricultural uses. No products are grown or sold and the tilling of the soil is related to a chemical process rather than to production of crops or plants. The trial court found, and we agree, that soil remediation is a waste treatment process and not an agricultural use.

For these reasons, we affirm the trial court's judgment which concludes that the soil remediation site is a non-conforming use in the RA District.

In summary, while the State does regulate how the process of soil remediation is to be carried out, it has not preempted a county zoning authority from deciding where this activity can be located.

Affirmed.

Judges GREENE and TIMMONS-GOODSON concur.