NORTH IREDELL NEIGHBORS FOR RURAL LIFE, JERRY O. MISHOE, REBECCA MISHOE, BRYAN EDWARD LEACH, SHERLENE NINA LEACH, WILLIAM B. PITT, LUCINDA D. PITT, DWIGHT R. BRIDGES, JUANITA BRIDGES, BARRY D. MASON, RANDA J. MASON, FRANKLIN D. REAVIS, AMY L. REAVIS, ASHLEY DEAN REAVIS, ROBERT E. REAVIS, JANE REAVIS, RICKEY EUGENE REAVIS, CYNTHIA REAVIS, ROBERT LOUIS TAYLOR, CARROLL EUGENE WARD, NANCY WARD, STEVE KENNETH SOMERS AS TRUSTEE FOR THE STEVE KENNETH SOMERS REVOCABLE LIVING TRUST, DONNA S. SOMERS AS TRUSTEE FOR THE DONNA S. SOMERS REVOCABLE LIVING TRUST, AND LORRIE E. MARION BARKER, PLAINTIFFS v. IREDELL COUNTY, HARRY PHILLIP McLAIN, LOUISE DUARTE McLAIN, CHARLES MICHAEL McLAIN, AND JANET HEWITT McLAIN, DEFENDANTS

No. COA08-1068

(Filed 7 April 2009)

**1. Appeal and Error— appealability—interlocutory order— substantial right**

Three interlocutory orders in a declaratory judgment case regarding a rezoning ordinance affected a substantial right and were immediately appealable by plaintiffs because the trial court's finding that the production of biodiesel by a farmer on farm premises for agricultural purposes is a bona fide farm use and exempt from county zoning ordinances effectively rendered moot plaintiffs' challenge of the rezoning of the individual defendants' property.

NORTH IREDELL NEIGHBORS FOR RURAL LIFE v. IREDELL CTY.

[196 N.C. App. 68 (2009)]

**2. Jurisdiction— standing—affirmative averment showing legal existence and capacity to sue required**

The trial court did not err in a declaratory judgment action by finding NINRL lacked standing and by granting the county's motion for summary judgment in part because: (1) N.C.G.S. § 1A-1, Rule 9(a) required NINRL to affirmatively aver that it was an unincorporated nonprofit association; and (2) plaintiffs failed to make an affirmative averment showing NINRL's legal existence and capacity to sue.

**3. Zoning— biodiesel production—not bona fide farm use**

The trial court erred in a declaratory judgment action when it found the production of biodiesel by a farmer on farm premises for agricultural purposes was a bona fide farm use and exempt from county zoning ordinances because: (1) under the unique set of facts presented in this case, the landowners' intended biodiesel production was not a bona fide farm use since the hauling of raw materials from surrounding farms, and the production of 500,000 gallons of biodiesel per year, when the landowners' farming operation required only 100,000 gallons of biodiesel per year, removed this production from the realm of bona fide farm use to a non-farm independent commercial enterprise; and (3) the added industrial process did not fall under the list in N.C.G.S. § 106-581.1, and thus the intended biodiesel production was subject to zoning which the landowners recognized by applying for and receiving rezoning of their property from single-family residential to heavy manufacturing conditional use district.

**4. Injunction— denial of motion pending appeal—building and operation of biodiesel refinery**

The trial court did not abuse its discretion in a declaratory judgment action when it refused to grant injunctive relief under N.C.G.S. § 1A-1, Rule 62(c) preventing the building and operation of a biodiesel refinery while the legality of that refinery was an open question because plaintiffs failed to show that the trial court's ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision.

Appeal by plaintiffs from judgments entered 4 February 2008 by Judge Kimberly S. Taylor in Iredell County Superior Court. Heard in the Court of Appeals 11 February 2009.

*Womble Carlyle Sandridge & Rice, PLLC, by Kurt E. Lindquist II and Sarah L. Buthe, for plaintiff-appellants.*

*Pope McMillan Kutteh Privette Edwards & Schieck, PA, by Martha N. Peed and William H. McMillan, for the McLains defendant-appellees.*

*Pope McMillan Kutteh Privette Edwards & Schieck, PA, by Martha N. Peed and William P. Pope, for Iredell County defendant-appellee.*

*North Carolina Farm Bureau Federation, Inc., by Secretary and General Counsel H. Julian Philpott, Jr., and Associate General Counsel Stephen A. Woodson, amicus curiae.*

HUNTER, JR., Robert N., Judge.

North Iredell Neighbors for Rural Life ("NINRL"), Jerry O. Mishoe, et seq. (collectively, "plaintiffs") appeal orders entered: (1) granting Iredell County's ("the County") motion for summary judgment against NINRL and (2) granting Harry Phillip McLain's, et seq. (collectively, "the McLains") motion for summary judgment against plaintiffs. Plaintiffs also appeal the trial court's denial of their motion for injunctive relief pending appeal. *See North Iredell Neighbors for Rural Life v. Iredell County*, 196 N.C. App. ——, —— S.E.2d —— (Apr. 7, 2009) (No. COA08-1010). We affirm in part and reverse in part.

## I. Background

On 5 September 2007, plaintiffs filed a verified complaint seeking a declaratory judgment that a rezoning ordinance adopted by the Iredell County Board of Commissioners was void and of no effect. Plaintiffs alleged that on or about 20 February 2007 the McLains applied to have a 7.88-acre tract of land rezoned from single-family residential to heavy manufacturing conditional use district. "The stated purpose of the request was to allow for the 'manufacture of soybeans and other crops to biodiesel,' and the application indicate[d] that the proposed specific permitted land use was the 'manufacture of biodiesel.' "

The property in question "is part of a larger tract of land consisting of approximately 218 acres, located off Snow Creek Road in . . . an unincorporated area known as the Snow Creek Community." NINRL "represents the residents of the Snow Creek Community who are opposed to the [r]ezoning and the operation of a biodiesel manufacturing facility in the community[.]" The remaining plaintiffs are

"the owners of properties that either adjoin or are located in close proximity to the [p]roperty" in question.

The County Board of Commissioners considered the McLains' application at a 7 August 2007 "quasi-judicial" public hearing. "The minutes of the . . . meeting reflect that the Board of Commissioners first voted four to one in favor of amending the Land Use Plan" and then "voted four to one in favor of the 'proposed zoning map amendment.' " "During its August 21, 2007 meeting and by a vote of four to one, the Board of Commissioners voted to adopt findings of fact for the conditional use permit that should have been adopted at the same time the [r]ezoning was approved."

Plaintiffs' complaint alleged: (1) "the Board of Commissioners lacked the authority to adopt a conditional use district rezoning that authorizes [biodiesel manufacturing;]" (2) "the Board of Commissioners failed to follow their own procedure as required by the Zoning Ordinance[;]" and (3) "the [r]ezoning . . . constitutes illegal spot zoning . . . ." Plaintiffs requested injunctive relief "until such time . . . as the [rezoning] has been approved or ratified by a court of law." On 26 September 2007, plaintiffs filed an amended, verified complaint and further alleged "the County failed to comply with statutory notice requirements . . . ."

The County filed a motion for summary judgment on 27 December 2007. The County's motion alleged plaintiffs "are not aggrieved persons and lack standing to pursue this matter" and "[NINRL] is a non-existent entity or one without power and authority to commence suit or to invoke and use the jurisdiction of the Courts of this State." The McLains also filed a motion for summary judgment on 27 December 2007. The McLains' motion alleged that "the Iredell County Board of Commissioners lacks authority to regulate the activities and that the activities contemplated by the defendants are bona fide farm activities and are not within the authority of the Iredell County Board of Commissioners to regulate pursuant to its zoning power."

On 4 February 2008, the trial court entered two orders. The first order granted the County's motion for summary judgment against NINRL and denied it against the remaining plaintiffs. The trial court found NINRL failed to "make an affirmative averment showing its legal existence and capacity to sue as required by Rule 9A of the North Carolina Rules of Civil Procedure." The second order granted the McLains' motion for summary judgment against plaintiffs. The trial court found that "[t]he production of biodiesel by a farmer on

farm premises for agricultural purposes is a bona fide farm use and as such the production of biodiesel is exempt from county zoning ordinances pursuant to N.C. Gen. Stat. § 153A-340 (2007)." The trial court further stated that "[s]o long as the McLains do not expand their production activity beyond 500,000 gallons and the biodiesel so produced is used for agricultural purposes on their farm or sold for agricultural use, the production of biodiesel is a bona fide farm use as a matter of law." Plaintiffs filed their notice of appeal from these judgments on 8 March 2008.

On 14 April 2008, plaintiffs filed a motion for an injunction pending appeal. Plaintiffs requested the trial court to

> enter an injunction pursuant to N.C. R. Civ. P. 62(c), enjoining the McLains from constructing or erecting any of the facilities associated with the biodiesel plant or operating the biodiesel plant pending the outcome of the appeal of this action, and also enjoining . . . [the] County from issuing any permits for the construction or operation of a biodiesel plant on the McLains' property.

The trial court denied plaintiffs' motion for an injunction pending appeal on 30 April 2008. Plaintiffs appeal.

## II. Interlocutory Appeal

[1] As a preliminary matter, we note that this appeal is interlocutory. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950).

> A party may appeal an interlocutory order under two circumstances. First, the trial court may certify that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. N.C.G.S. § 1A-1, Rule 54(b) (1990). Second, a party may appeal an interlocutory order that "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment."

*Dep't of Transp. v. Rowe*, 351 N.C. 172, 174-75, 521 S.E.2d 707, 709 (1999) (quoting *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381).

Here, plaintiffs appeal three orders entered by the trial court. None of the orders appealed from were certified pursuant to Rule

54(b) by the trial court. Nonetheless, plaintiffs' appeal affects a substantial right and is immediately appealable. *Id.* at 175, 521 S.E.2d at 709. The trial court's finding that the "[t]he production of biodiesel by a farmer on farm premises for agricultural purposes is a bona fide farm use and . . . exempt from county zoning ordinances" effectively renders plaintiffs' challenge of the rezoning of the McLains' property moot. Plaintiffs may therefore appeal the trial court's orders because they "affect[] some substantial right . . . and will work an injury to [plaintiffs] if not corrected before an appeal from the final judgment." *Veazey,* 231 N.C. at 362, 57 S.E.2d at 381.

### III. Issues

Plaintiffs argue the trial court erred when it: (1) granted the County's motion for summary judgment in part; (2) granted the McLains' motion for summary judgment; and (3) denied their motion for an injunction pending appeal.

### IV. NINRL's Standing

**[2]** Plaintiffs argue the trial court erred when it found NINRL lacked standing and granted the County's motion for summary judgment in part because the trial court improperly "imposed pleading requirements where none existed [and] ignored record evidence . . . ." We disagree.

This Court reviews a trial court's order for summary judgment de novo to determine "whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Summey v. Barker,* 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003); *Robins v. Town of Hillsborough,* 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007).

N.C. Gen. Stat. § 1-69.1 (2007) states:

(a) Except as provided in subsection (b) of this section:

   (1) All unincorporated associations, organizations or societies, or general or limited partnerships, foreign or domestic, whether organized for profit or not, may hereafter sue or be sued under the name by which they are commonly known and called, or under which they are doing business, to the same extent as any other legal entity established by law and without naming any of the individual members composing it.

(2) Any judgments and executions against any such association, organization or society shall bind its real and personal property in like manner as if it were incorporated.

(3) *Any unincorporated association*, organization, society, or general partnership bringing a suit in the name *by which it is commonly known and called must allege the specific location of the recordation required by G.S. 66-68.*

(b) *Unincorporated nonprofit associations are subject to Chapter 59B of the General Statutes and not this section.*

(Emphasis added.)

N.C. Gen. Stat. § 1A-1, Rule 9(a) (2007) states:

*Any party not a natural person shall make an affirmative averment showing its legal existence and capacity to sue.* . . . When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

(Emphasis added.)

The County's motion for summary judgment filed 27 December 2007 alleged, among other things, that "[NINRL] is a non-existent entity or one without power and authority to commence suit or to invoke and use the jurisdiction of the Courts of this State." The trial court entered the following findings of fact in its order granting the County's motion for summary judgment with regard to NINRL:

1. [NINRL] did not allege a specific location of recordation as required by *N.C. Gen. Stat.* § 1-69.1 for unincorporated associations bringing a suit in the North Carolina courts.

2. [NINRL] did not allege that it is a nonprofit unincorporated association bringing suit with standing under Chapter 59B.

3. [NINRL] did not make an affirmative averment showing its legal existence and capacity to sue as required by Rule 9A of the North Carolina Rules of Civil Procedure.

Plaintiffs' amended complaint stated only that "[NINRL] represents the residents of the Snow Creek Community who are opposed to the Rezoning and the operation of a biodiesel manufacturing facility in the community[.]" While N.C. Gen. Stat. § 1-69.1(b) eliminates the pleading requirements set forth in N.C. Gen. Stat. § 1-69.1(a)(3), N.C. Gen. Stat. § 1A-1, Rule 9(a) required NINRL to affirmatively aver that it was an unincorporated nonprofit association. Plaintiffs failed to "make an affirmative averment showing [NINRL's] legal existence and capacity to sue." N.C. Gen. Stat. § 1A-1, Rule 9(a). The trial court properly found that NINRL "d[id] not have standing to bring suit in this matter." This assignment of error is overruled.

### V. Bona Fide Farm Use

**[3]** Plaintiffs argue the trial court erred when it found "[t]he production of biodiesel by a farmer on farm premises for agricultural purposes is a bona fide farm use and . . . exempt from county zoning ordinances . . . ." We agree.

> [W]hen the General Assembly granted authority to the counties to regulate and restrict the use of land by means of zoning ordinances in N.C. Gen. Stat. § 153A-340, including the power to regulate and restrict the "use of buildings, structures, and land for trade, industry, residence, or other purposes," it carved out one important exception to the counties' jurisdiction: the authority to regulate land being used for "bona fide farm purposes." Specifically, county zoning "regulations may not affect bona fide farms, but any use of farm property for nonfarm purposes is subject to the regulations." Although the statute does not define "bona fide farm," it does define "bona fide farm purposes"[.]

*Sedman v. Rijdes*, 127 N.C. App. 700, 703, 492 S.E.2d 620, 622 (1997) (citation omitted). "[B]ona fide farm purposes include the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultural products as defined in G.S. 106-581.1 having a domestic or foreign market." N.C. Gen. Stat. § 153A-340(b)(2) (2007).

> When performed on the farm, "agriculture", "agricultural", and "farming" also include the marketing and selling of agricultural products, agritourism, the storage and use of materials for agricultural purposes, packing, treating, processing, sorting, storage, and other activities performed to add value to crops, livestock,

and agricultural items produced on the farm, and similar activities incident to the operation of a farm.

N.C. Gen. Stat. § 106-581.1(6) (2007).

Five cases decided by this Court provide additional clarification on the definition of a bona fide farm use. *See County of Durham v. Roberts*, 145 N.C. App. 665, 671, 551 S.E.2d 494, 498 (2001) (explaining that removal of soil in preparation of a horse pasture and subsequent selling of the soil "was related and incidental to the farming activities of boarding, breeding, raising, pasturing and watering horses[]"); *Ball v. Randolph County Bd. of Adjust.*, 129 N.C. App. 300, 304, 498 S.E.2d 833, 836 (1998) ("Although sometimes referred to as 'land farming,' soil remediation does not fit within the above description of agricultural uses. No products are grown or sold and the tilling of the soil is related to a chemical process rather than to production of crops or plants."), *disc. review improvidently allowed*, 349 N.C. 348, 507 S.E.2d 272 (1998); *Sedman*, 127 N.C. App. at 704, 492 S.E.2d at 622 ("[T]he activities in which Multiflora is engaged including the construction of a driveway, the use of the driveway by large trucks to export plants from the premises, the operation of thirty-seven fans emitting low frequency sound and the selling of plants on the premises, fall within the bona fide farm purposes exemption . . . ."); *Baucom's Nursery Co. v. Mecklenburg Co.*, 62 N.C. App. 396, 401, 303 S.E.2d 236, 239 (1983) (holding the nursery and greenhouse to be a bona fide farm because agricultural operations included growing vegetables, flowers, and shrubs), *disc. review denied*, 322 N.C. 834, 371 S.E.2d 274 (1988); *Development Associates v. Board of Adjustment*, 48 N.C. App. 541, 547, 269 S.E.2d 700, 704 (1980) ("[D]ogs are not included in the classification of livestock and [ ] dog breeding and the operation of a dog kennel are not 'farming' activities within the meaning of G.S. 153A-340."), *disc. review denied*, 301 N.C. 719, 274 S.E.2d 227 (1981). While these cases provide some guidance on how this Court has interpreted bona fide farm use in the past, none are particularly instructive on the facts before us.

Here, the trial court entered the following findings of fact in its order granting the McLains' motion for summary judgment:

1. The production of biodiesel involves the pressing of oil seeds including soybeans, canola and sunflower seeds to extract the oil. The oil is treated in order to estrify the oil converting the oil to a combustible fuel. The byproducts include seed meal and glycerin.

There is no factual dispute concerning the means and methods of production of biodiesel.

2. The McLains intend to produce 500,000 gallons per year of biodiesel fuel from various oil seeds grown by them and by their neighbors. The biodiesel produced is to be consumed in the McLains' farm operation which covers approximately 5000 acres and requires approximately 100,000 gallons of diesel per year. Any excess biodiesel production will be sold for farm uses.

3. Biodiesel is a preferable fuel for farm equipment since it requires no additives as does diesel produced from petroleum. Biodiesel is suitable for fuel in all types of farm equipment. The key byproduct of biodiesel production is seed meal which is an important ingredient in animal feed. The local dairy, cattle and poultry farmers comprise a ready market for the seed meal.

4. The raw materials for the production of biodiesel will be grown by the McLains and their neighbors, pressed for oil on the McLain farm and the resulting product will be used to fuel the tractors, trucks, combines and other farm machinery owned and operated by the McLains. Any excess will be sold for farm use.

Under the unique set of facts presented here, we hold that the McLains' intended biodiesel production, as found by the trial court, is not a bona fide farm use. The hauling of raw materials from surrounding farms, and the production of 500,000 gallons of biodiesel per year, when the McLains' farming operation requires only 100,000 gallons of biodiesel per year, removes this production from the realm of bona fide farm use to a non-farm independent commercial enterprise. While the McLains' large scale industrial farming operation has certainly fit under the bona fide farm exception to date, this added industrial process, as they currently intend, is not "the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultural products as defined in G.S. 106-581.1 having a domestic or foreign market." N.C. Gen. Stat. § 153A-340(b)(2). The McLains' intended biodiesel production is therefore subject to zoning.

We note that the McLains seem to have recognized this fact when they applied for and received rezoning of their property from single-family residential to heavy manufacturing conditional use district. It is only after receiving the conditional use permit from the County

that the McLains asserted their "bona fide" exemption. The new characterization of "exempt" activity undermines plaintiffs' contentions on appeal.

We also recognize that there may come a time when the economies of scale are such that a farming operation may be able to produce, through its own crops, only that amount of biodiesel necessary for its own operations, but those facts are not before us and we express no opinion on whether that would be a bona fide farm use as a matter of law.

The trial court erred when it entered summary judgment in favor of the McLains. In light of this holding, it is unnecessary to review plaintiffs' remaining assignments of error relating to the McLains' motion for summary judgment.

### VI.  Injunction Pending Appeal

**[4]** Plaintiffs argue the trial court erred when it "refused to grant injunctive relief preventing the building and operation of the biodiesel refinery while the legality of that refinery is an open question." We disagree.

N.C. Gen. Stat. § 1A-1, Rule 62(c) (2007) states:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, *the court in its discretion may* suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

(Emphasis added.)

We review the trial court's denial of plaintiffs' Rule 62(c) motion for an abuse of discretion. Id. "An abuse of discretion results where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Long v. Harris*, 137 N.C. App. 461, 464-65, 528 S.E.2d 633, 635 (2000) (citation omitted).

In *Investors, Inc. v. Berry*, our Supreme Court stated:

> A preliminary injunction . . . is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in

the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (citations omitted). While no North Carolina court appears to have articulated the standard which a trial court should use when ruling on a Rule 62(c) motion, we hold the two-pronged test articulated by our Supreme Court in Berry to be applicable.

The trial court stated in its order denying plaintiffs' Rule 62(c) motion:

> Irrespective of whether [plaintiffs] prevail on the issue of biodiesel fuel not being a bonafide farm operation, this Court is nevertheless firmly of the opinion that the crushing of soybean and canola seed into oil for sale is, in this Court's opinion, a bonafide farm operation and that the . . . McLain[s] should be allowed to proceed to crush and extract these respective oils. [The] McLain[s] state in an affidavit that there are no immediate plans to convert the bean and seed oil into biodiesel fuel; however, if [the McLains] choose to continue refinery construction, they do so at their own risk. This Court will not impose an interim injunction specifically noting that from Judge Taylor's order of February 4, 2008, until the institution of this petition for injunction filed on April 14, 2008, some two months elasped without any contention by [plaintiffs] of an urgent threat of irreparable harm and after having reviewed the standards set forth in both the federal and North Carolina cases, this Court does not believe that the ultimate outcome of this case requires injunctive relief until an appellate decision has been reached.

> [Plaintiffs] further seek to restrain Iredell County from issuing any permits for the construction or operation of a biodiesel plant on the McLain property. This Court has received assurances that no applications have been made to Iredell County for such a permit however this Court will not restrain the permitting process in the event an application is submitted.

Plaintiffs have failed to show that "the [trial] court's ruling [was] manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." Long, 137 N.C. App. at 465, 528 S.E.2d at 635 (citation omitted). The trial court did not abuse its discretion when it denied plaintiffs' Rule 62(c) motion for an injunction pending appeal. This assignment of error is overruled.

## VII. Conclusion

Plaintiffs failed to "make an affirmative averment showing [NINRL's] legal existence and capacity to sue." N.C. Gen. Stat. § 1A-1, Rule 9(a). The trial court did not err when it found NINRL lacked standing. The trial court's 4 February 2008 order granting the County's motion for summary judgment in part is affirmed.

The trial court erred when it found "[t]he production of biodiesel by a farmer on farm premises for agricultural purposes is a bona fide farm use and . . . exempt from county zoning ordinances[.]" The trial court's 4 February 2008 order granting the McLains' motion for summary judgment against plaintiffs is reversed, and this matter is remanded for further proceedings consistent with this opinion.

The trial court did not abuse its discretion when it denied plaintiffs motion for an injunction pending appeal. The trial court's 30 April 2008 order denying plaintiffs' Rule 62(c) motion is affirmed.

Affirmed in part; reversed in part; and remanded.

Judges McGEE and JACKSON concur.