CHARLES L. MILKS, SR., Plaintiff,
v.
JESSE LEE MILLS, III, Defendant.
No. COA08-1313.
Court of Appeals of North Carolina.
Filed: August 4, 2009.
This case not for publication
Blanco Tackabery & Matamoros, P.A., by Peter J. Juran for Plaintiff-Appellee.
Hatfield, Mountcastle, Deal, Van Zandt & Mann, L.L.P., by John P. Van Zandt, III, for Defendant-Appellant.
STEPHENS, Judge.

I. Factual Background and Procedural History
Jesse Lee Mills, III ("Defendant") and Charles Milks, Sr. ("Plaintiff") are brothers-in-law who entered into an agreement in the summer of 2006 to purchase Village Motorcycles, Inc. ("Village Motorcycles"), located in Clemmons, North Carolina. The material facts of the underlying case are highly disputed between the two parties, are not necessary to an understanding and resolution of the lone issue currently before this Court[1], and are recited solely to demonstrate how the parties arrived at their present position in this lawsuit.
The parties intended that each of their adult sons would operate Village Motorcycles. Pursuant to their agreement, each party was to invest $75,000 for the purchase of the business. Plaintiff claims that Defendant, acting as his financial advisor[2], erroneously assured him that withdrawing from Plaintiff's IRA to fund Plaintiff's share of the $75,000 purchase price for Village Motorcycles would not be a taxable event. Plaintiff also alleges that Defendant convinced him to co-guarantee a loan of $100,000 to fund the operations of the business, and that Defendant instead used the loan to fund Defendant's share of the $75,000 purchase price. Plaintiff claims that during the time Defendant acted as CEO of Village Motorcycles, Defendant failed to take reasonable care in the operation of the business, including tax withholding and payment of business debts. Plaintiff further alleges that Defendant forged Plaintiff's signature on multiple documents, and withdrew all the funds from Plaintiff's IRA account and transferred them to a CD in Defendant's name. Plaintiff claims that when he inquired about the operation and finances of the business, Defendant removed all the financial records of Village Motorcycles and refused to provide Plaintiff with an explanation of stock ownership transactions and other corporate events. Plaintiff alleges that he subsequently learned from third parties that Defendant had caused all the stock in the business to be endorsed solely to Defendant, rather than jointly with Plaintiff as initially agreed. Defendant denies these allegations.
On 18 April 2007, Plaintiff filed a complaint against Defendant alleging breach of contract, constructive trust, breach of fiduciary duty, unfair and deceptive trade practices, and violations of the North Carolina Investment Advisors Act. After Defendant failed to answer the complaint, Plaintiff filed a motion for entry of default on 23 May 2007 pursuant to Rule 55 of the North Carolina Rules of Civil Procedure. On 24 May 2007, Plaintiff's motion for default was granted by the Clerk of Superior Court. On 11 June 2007, Plaintiff filed a motion for default judgment. On 22 June 2007, Defendant filed a motion to set aside entry of default, which was granted 31 July 2007. On 19 July 2007, Defendant filed his answer.
On 17 September 2007, Plaintiff filed a motion to compel Defendant to fully answer Plaintiff's discovery requests, and this motion was granted by order entered 1 October 2007. The trial court found that Defendant's answers to interrogatories and requests for production of documents were "incomplete, and numerous documents promised therein have yet to be produced."
On 24 October 2007, Plaintiff filed a motion for sanctions for Defendant's failure to comply with the 1 October 2007 order. Plaintiff's motion was granted and an order for sanctions was entered on 16 November 2007 by the Honorable Steve A. Balog (the "Balog order"). Judge Balog found, in pertinent part, that:
2. Defendant has not taken either the discovery or the previous Orders of this Court sufficiently seriously and has failed to comply with the discovery and with the Order Compelling Discovery. This matter should have been a priority for Defendant, representing as it does an Order of Court.
3. The discovery sought by Plaintiff is relevant and discoverable and as of the date of the hearing, Defendant has not fully complied with his obligations.
4. Failure to comply with the prior Order of this Court is serious and substantial Sanctions should be allowed. The Court has considered Plaintiff's request for Sanctions in the form of striking Defendant's Answer and declaring Defendant to be in default, but believes that particular request is too harsh even for a serious failure to comply with a Court Order. Instead, the Court finds that appropriate Sanctions shall be under Rule 37(b)(2)(b), in the form of an Order prohibiting Defendant from introducing evidence at trial that he made any financial investment in the company Village Motorcycles, Inc. or has deposited or expended funds on behalf of the company or its operations, and prohibiting him from arguing that he made such financial investments at trial.
. . . .
6. Nothing in this Order is intended to indicate that Defendant has yet complied with his discovery obligations. Mr. Mills is still obligated to fully and completely comply with the discovery requests, and this Court's previous Order compelling discovery. Compliance shall include, at a minimum, but not be limited to, the shortcomings identified by [Plaintiff's counsel's] letter of August 6th, 2007 to [Defendant's counsel] identifying shortcomings in Defendant's initial responses.
Judge Balog also ordered Defendant to pay Plaintiff's attorney's fees in the amount of $1,237.50. Although eventually paid, Defendant failed to pay the fees in a timely manner and offered no evidence that he was financially unable to do so.
Subsequent to the Balog order, Defendant produced certain additional items, but a letter from Plaintiff's counsel on 19 December 2007[3] itemized the shortcomings of Defendant's production and compliance with the Balog order.
On 8 February 2008, Defendant's earlier deposition was resumed, and he acknowledged that his discovery responses had failed to include business records, tax and accounting records, loan collateral records, and records relating to personal payments on company vehicles.
On 11 March 2008, Plaintiff filed a motion requesting, inter alia, that Defendant be held in civil contempt, and seeking additional sanctions, and an additional order to comply with discovery. Plaintiff alleged that Defendant had not complied with the conditions of the order for sanctions entered 16 November 2007. On 6 May 2008, the trial court granted Plaintiff's motion and the Honorable Edgar B. Gregory entered an order for sanctions (the "Gregory order"), finding that Defendant had willfully failed to comply with the Balog order of 16 November 2007. The Gregory order imposed the following sanctions: awarded expenses for Plaintiff's prosecuting the motion and depositions, struck Defendant's answer, and found Defendant to be in civil contempt. It is from Judge Gregory's order of 6 May 2008 that Defendant now appeals.

II. Discussion
Judge Gregory's order is an interlocutory order. "`An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.'" N. Iredell Neighbors for Rural Life v. Iredell County, __ N.C. App. __, __, 674 S.E.2d 436, 439 (2009) (quoting Veazey v. Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381, reh'g denied, 232 N.C. 744, 59 S.E.2d 429 (1950)).
[A]n interlocutory order is immediately appealable only under two circumstances. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. . . . The other situation in which an immediate appeal may be taken from an interlocutory order is when the challenged order affects a substantial right of the appellant that would be lost without immediate review.
Embler v. Embler, 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001) (internal quotation marks and citations omitted). "An order compelling discovery is not a final judgment[, nor] does it affect a substantial right. Consequently, it is not appealable. However, when the order is enforced by sanctions pursuant to N.C. R. Civ. P. 37(b), the order is appealable as a final judgment." Walker v. Liberty Mut. Ins. Co., 84 N.C. App. 552, 554, 353 S.E.2d 425, 426 (1987) (citations omitted). Thus, although Judge Gregory's order is interlocutory, it is properly before us as an order enforced by sanctions.
Defendant argues that the trial court abused its discretion by imposing "overly[]severe" discovery sanctions in holding Defendant in civil contempt, and in ordering Defendant's answer stricken and thus finding Defendant in default under Rule 55(a) of the North Carolina Rules of Civil Procedure. Defendant's appeal is based on conclusions of law numbers six and seven of Judge Gregory's order which provide in pertinent part:
6. The Court hereby Orders that Defendant's Answer is stricken. Defendant is adjudged to be in default [u]nder Rule 55(a) of the North Carolina Rules of Civil Procedure . . . .
7. This Order of civil contempt is occasioned by Defendant's willful disobedience to Judge Balog's order  Defendant may purge himself of his continuous contempt by: (a) turning over all keys and titles to vehicles owned by Village Motorcycles or in which that company has an interest . . .; (b) by not selling or participating in sale of assets owned by Village Motorcycles, . . .; (c) cooperating with Plaintiff in closing the business; (d) producing all ledgers and other notations provided to Defendant's accountant (also the accountant for the business), which Defendant testified were provided for the purpose of creating tax related documents for the business; (e) producing all documents relating to the purported annuity or annuities, which Defendant claimed was pledged to secure the Fidelity Bank Loan to the company; and (f) turning over to counsel for Plaintiff the requested information about the annuities/vehicles within thirty (30) days after this Order. . . .
We address each conclusion at issue in turn.

A. Entry of Default Judgment
"`The imposition of sanctions under Rule 37 is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion.'" Moore v. Mills, 190 N.C. App. 178, 180, 660 S.E.2d 589, 591 (2008) (quoting In re Pedestrian Walkway Failure, 173 N.C. App. 237, 246, 618 S.E.2d 819, 826 (2005)). However, this Court has recently noted that
[i]mposition of sanctions that are directed to the outcome of the case, such as dismissals, default judgments, or preclusion orders, are reviewed on appeal from final judgment, and while the standard of review is often stated to be abuse of discretion, the most drastic penalties, dismissal or default, are examined in the light of the general purpose of the Rules to encourage trial on the merits.
Id. (citing American Imports, Inc. v. G.E. Employees W. Region Fed. Credit Union, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978)). However, even examining the imposition of sanctions in such light, ultimately, the decision of the trial court will be reversed only upon "`a showing that [the] ruling was so arbitrary that it could not have been the result of a reasoned decision.'" Baker v. Charlotte Motor Speedway, Inc., 180 N.C. App. 296, 299, 636 S.E.2d 829, 832 (2006)(quoting Becker v. Pierce, 168 N.C. App. 671, 678, 608 S.E.2d 825, 830 (2005)), disc. review denied, 361 N.C. 425, 648 S.E.2d 204 (2007).
Defendant argues that the entry of default judgment was arbitrary because it was based on the argument of Plaintiff's counsel and an affidavit of Plaintiff, rather than on the evidence presented at the hearing on the motion for sanctions, including an exhibit consisting of approximately 410 pages of documents produced before the contempt hearing. However, a trial judge is presumed to have considered the entire record before him. See In re Morales, 159 N.C. App. 429, 433, 583 S.E.2d 692, 695 (2003)(holding that "[w]here there is competent evidence in the record supporting the court's [determination], we presume that the court relied upon it and disregarded the incompetent evidence"); see also In re Spivey, 345 N.C. 404, 417, 480 S.E.2d 693, 700 (1997). Here, the record on appeal reveals numerous instances where Defendant failed to comply with discovery requests and orders of the trial court, thus supporting the trial court's findings of fact, which support the conclusions of law.
Specifically, the trial court found that Defendant's answers to Plaintiff's first set of interrogatories and first request for production of documents were partially unresponsive and incomplete, and documents promised therein were not timely produced; that Defendant had still failed to produce complete responses as of the date of Plaintiff's motion to compel on 17 September 2007; that the trial court granted Plaintiff's motion to compel giving Defendant until 22 October 2007 to respond; and that Plaintiff filed a motion for sanctions on 24 October 2007 alleging that Defendant had not complied with the order compelling discovery.
The Gregory order incorporated Judge Balog's order of 16 November 2007, which sanctioned Defendant for his failure to comply with the order compelling discovery, and included Judge Balog's pertinent findings of fact. Specifically, Judge Balog found that "Defendant [had] not taken either the discovery or the previous Orders of this Court sufficiently seriously and [had] failed to comply with the discovery and with the Order Compelling Discovery." Furthermore, Judge Balog "considered Plaintiff's request for Sanctions in the form of striking Defendant's Answer and declaring Defendant to be in default, but believe[d] that particular request [was] too harsh even for a serious failure to comply with a Court Order."
The Gregory order made the following findings of fact as to the events that took place after the entry of the Balog order:
30. Subsequent to Judge Balog's Order of Contempt, Defendant produced certain additional items, including an accordion-style file with no order or description of what it contained.
31. On December 19, 2007, in a letter erroneously dated November 16, 2007, counsel for Plaintiff again itemized the shortcomings of Defendant's production and compliance with Judge Balog's Order. The Court finds as a fact Defendant has failed to provide each and every item described in the letter of December 19, 2007 . . . although an "accordion style" file was produced with no order or description of what it contained which was turned over to Plaintiff's counsel.
32. Defendant did appear, as ordered, for a resumption of his deposition. At the time of his renewed deposition, Defendant acknowledged under oath that his discovery responses failed, at a minimum, to include the following: [business records, tax and accounting records, loan collateral records, records relating to personal payments on company vehicles, personal financial records, and investment documentation.]
33. The Court finds as fact that Defendant has never produced full sets of bank records to Plaintiff, instead contending in his Affidavit and Response to Plaintiff's Motion for Additional Sanctions that he understood Plaintiff had received these from a third-party.. . . The Court further finds that Plaintiff was able to acquire at least the bank records through third-party discovery, which evidences that through due diligence Defendant could also have procured these, even if he no longer maintained copies.
Judge Gregory carefully considered the whole range of sanctions available, including lesser sanctions, before determining that striking the answer was warranted. The Gregory order determined that "no lesser sanction than striking the Answer and placing Defendant in default will properly redress Defendant's willful refusal to comply." Defendant does not challenge the trial court's findings on appeal. Accordingly, as these findings of fact fully support the challenged conclusion, the trial court did not abuse its discretion in entering the order for sanctions.
Defendant also argues, however, that since he could not produce certain records requested in discovery at the time of his contempt hearing[4], his actions in failing to produce the same could not have been willful. This argument ignores the substantial and undisputed fact that Defendant had failed to comply with the order compelling discovery well before the contempt hearing. Judge Gregory specifically found that while the computer containing the company's business records was not in Defendant's possession at the time of the Gregory order, the computer had been in Defendant's possession for many months while Defendant was out of compliance with court orders. Indeed, Defendant admitted at his deposition that "push[ing] a button" could have provided the "QuickBooks" business records, but during the time the computer was in his possession, he failed to do so.
Additionally, Defendant is required to produce documents that are within his care, custody and control, including documents in the hands of agents. See Pugh v. Pugh, 113 N.C. App. 375, 380, 438 S.E.2d 214, 218 (1994) (noting that the "federal courts have universally held that documents are deemed to be within the possession, custody or control of a party . . . if the party has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand") (citation omitted). Defendant failed to produce documents that were being held by his agents, such as the documents that were in the hands of his accountant, insurer, and bank. Furthermore, Judge Gregory found that Plaintiff was able to acquire some of Defendant's bank records through third-party discovery, showing that through due diligence, Defendant could have procured these same records.
We conclude that the trial court did not abuse its discretion in entering default judgment as a sanction against Defendant. This was a reasoned decision, properly supported by evidence in the record before the court and by numerous, detailed, unchallenged findings of fact.

B. Contempt
Review in contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.
Hartsell v. Hartsell, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573 (1990) (citations and punctuation omitted), aff'd per curiam, 328 N.C. 729, 403 S.E.2d 307 (1991).
Defendant makes essentially the same argument as he did against the entry of default judgment, that there was no evidence by which Judge Gregory could have found Defendant "in willful and continuous contempt." However, in addition to Defendant's testimony at the contempt hearing and the 410 pages of documents provided to Plaintiff prior to the hearing, there were other items before Judge Gregory, including affidavits and several pages of Defendant's deposition where he admitted to having access to the documents requested by Plaintiff, which he failed to tender to Plaintiff. Additionally, the entire record was before the trial court, including the 2007 order granting Plaintiff's motion to compel discovery, and the Balog order finding Defendant in contempt. Judge Gregory made findings of fact that, subsequent to the Balog order, Defendant had produced "an accordion-style file with no order or description of what it contained[;]" that Defendant had failed to provide all of the items described in Plaintiff's 19 December 2007 letter; and that Defendant acknowledged under oath that his discovery responses failed, at a minimum, to include business records, tax and accounting records, loan collateral records, records relating to personal payments on company vehicles, personal financial records, and investment documentation. Thus, the trial court's findings of fact are supported by competent evidence, and these findings support the trial court's conclusion that Defendant's "failure to comply with Judge Balog's order has been willful and without any justification."
Finally, Defendant argues that he should not have been found in contempt because he did not have the means to comply with the requests for production. In regard to a failure to obey an order to produce discovery, a judge may make such orders as are just. N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (2007). This Court has stated that this rule is "very flexible and gives a broad discretion to the trial judge." Laing v. Liberty Loan Co., 46 N.C. App. 67, 71, 264 S.E.2d 381, 384 (citation omitted), disc. review denied, 300 N.C. 557, 270 S.E.2d 109 (1980).
For a court to find a party in contempt, it is "essential that the alleged contemnor have the means to comply, and that the court so find[.]" Glesner v. Dembrosky, 73 N.C. App. 594, 597, 327 S.E.2d 60, 62 (1985) (citation omitted). This Court has also stated that "[i]f a party's failure to produce is shown to be due to inability fostered neither by its own conduct nor by circumstances within its control, it is exempt from the sanctions of the rule." Laing, 46 N.C. App. at 71, 264 S.E.2d at 384 (noting that while the rule does not require the impossible, it does require a good faith effort at compliance with the court order). Ability to comply with a court order for purposes of civil contempt has been interpreted as not only the present means to comply, but also the ability to take reasonable measures to comply. Watson v. Watson, 187 N.C. App. 55, 66, 652 S.E.2d 310, 318 (2007) (noting that "willfulness" constitutes ability to comply with the order and a deliberate and intentional failure to do so), disc. review denied, 362 N.C. 373, 662 S.E.2d 551 (2008).
Failure to produce will be excused only for inability to produce. In this case, Defendant had ample access and opportunity to produce the requested discovery. Even though the computer was no longer in his hands by the time of the contempt hearing, Defendant had prior opportunities to obtain the requested documents from the computer while it was in his control and during the time he was under a court order to do so. Additionally, other documents were in the control of Defendant's bank, accountant, and insurer, which he had the ability to obtain and failed to do so.
The trial court properly concluded that the fact that discovery is available from third-party sources "does not relieve a party of responding to properly propounded discovery." See Pugh, 113 N.C. App. at 380, 438 S.E.2d at 218 (holding that a party may obtain production of documents or other tangible items which are within the "possession, custody or control" of the other party). The trial court also properly concluded that Defendant was obligated to go to banks, brokerage houses, accountants and other third parties to obtain records if Defendant did not have copies of requested documents. See id. Defendant was required to take reasonable measures to comply, and procuring discovery that was readily available from third-party sources was not unreasonable. See Teachey v. Teachey, 46 N.C. App. 332, 334, 264 S.E.2d 786, 787 (1980) (For civil contempt to be applicable, the defendant must be able to take reasonable measures that would enable him to comply with the order.).
Judge Gregory's entry of default and finding of contempt were supported by appropriate findings of fact based upon competent evidence which, in turn, supported the trial court's conclusions of law. Accordingly, the order of the trial court entering default judgment against Defendant and finding him in contempt is
AFFIRMED.
Judges BRYANT and GEER concur.
Report per Rule 30(e).
NOTES
[1] The issue before us is whether the trial court abused its discretion in the discovery sanctions it imposed.
[2] Plaintiff further alleges that Defendant had acted as Plaintiff's financial advisor "[f]or many years" before the transactions that culminated in this lawsuit.
[3] Plaintiff's letter was erroneously dated 16 November 2007.
[4] Plaintiff's counsel acknowledged during the contempt hearing on 7 April 2008 that Defendant was unable to produce financial information contained in the QuickBooks program stored on Village Motorcycle's computer because the computer was no longer in Defendant's possession.