COUNTY OF DURHAM v. LUTHER D. ROBERTS AND SHEILA C. ROBERTS v. KENT FOGLEMAN; LINDA FOGLEMAN; RALPH L. EMORY; TONY A. FOGLEMAN; ARDIS GEDDINGS; GERALD M. KENDRICK; JUDITH W. KENDRICK; CARLA R. WALL, STEVEN B. WALL; AND DAISY WALL

No. COA00-751

(Filed 21 August 2001)

### 1. Zoning— city/county ordinance—soil extraction—bona fide farm purpose—livestock

The trial court did not err by finding that defendant landowner's soil extraction on land that defendant planned to operate a horse farm for her family's enjoyment constituted a bona fide farm purpose within the meaning of N.C.G.S. § 153A-340 and was therefore exempt from a city/county zoning ordinance, because: (1)N.C.G.S. § 153A-340(b) provides that all bona fide farms with the exception of swine farms are exempt from zoning regulations; (2) the term "livestock" under the statute includes horses; and (3) defendant's plan to breed and raise horses means she is involved in the production and activities relating or incidental to the production of livestock as required by the statute.

### 2. Injunction— soil extraction—dissolution of preliminary injunction—denial of permanent injunction

The trial court did not err by dissolving a preliminary injunction and by denying intervenors' request for a permanent injunction to prevent defendant landowner's soil extraction on land that defendant planned to operate a horse farm for her family's enjoyment, because no basis for injunctive relief exists when defendant's activities are bona fide farm purposes within the meaning of N.C.G.S. § 153A-340(b)(2) that are exempt from a city/county zoning ordinance.

### 3. Appeal and Error— abandonment of assignment of error—documents in appendix to brief—failure to cite case authority

Although defendant landowner contends the trial court erred by concluding as a matter of law that the removal and excavation of soil constitutes "resource extraction" as defined under a city/county zoning ordinance, this assignment of error is abandoned because: (1) external documents included in an appendix to a brief but not included in the record are not considered; and (2) defendant sets forth no case authority in the text of her argument.

COUNTY OF DURHAM v. ROBERTS

[145 N.C. App. 665 (2001)]

Appeal by intervenors-appellants from judgment entered 19 January 2000 by Judge Howard E. Manning, Jr. in Durham County Superior Court. Heard in the Court of Appeals 19 April 2001.

*Lowell L. Siler for plaintiff-appellee Durham County.*

*No brief filed for defendant-appellee Luther Roberts.*

*Thomas H. Stark for defendant-appellee Sheila Roberts.*

*The Brough Law Firm by Michael B. Brough and Pulley, Watson, King & Lischer by Richard N. Watson for intervenors-appellants.*

THOMAS, Judge.

Intervenors appeal a decision by the trial court that found soil extraction a legitimate farm purpose where the landowner planned to operate a horse farm for her family's enjoyment. Defendant, landowner Sheila Roberts, cross-appeals the trial court's finding that the operation in question constituted soil extraction within the meaning of the Durham County Ordinances.

For the reasons discussed herein, we affirm the trial court.

At the time of this action, defendants Luther and Sheila Roberts, then married, owned approximately 113 acres of land in northern Durham County. Defendants subsequently divorced and Sheila Roberts became the sole owner of the land. Pursuant to the local zoning ordinance, the land was zoned Rural District and located in the Falls-Jordan Watershed, outside of the Urban Growth Area. The zoning ordinance precludes resource extraction, which is only allowed in industrial districts or with a permit.

In the fall of 1998, defendants hired a contractor to excavate and remove soil consisting of jurassic clay so they could operate a horse farm. The original soil was of negligible nutritional value and the ponds were inadequate, such that the original landscape would not support a horse farm. The removal of less than three feet of the clay allowed the soil to become better drained and support a pasture necessary to breed and raise horses. The drainage was directed to the existing ponds, which kept them filled. To finance this expensive undertaking, defendants sold the excavated clay to the excavation contractor, who had a landfill contract with the City of Durham.

In the midst of the excavation and removal, on 12 October 1998, zoning enforcement officer Dennis Doty (Doty) observed several dump trucks being filled by a trackhoe and then exiting the property. Doty informed Luther Roberts, who was present at the site, that the Durham City/County Zoning Ordinance prohibited resource extraction in their Rural District and in the Watershed District.

Subsequently, Doty delivered a written notice of violation to Luther Roberts and his attorney on 16 October 1998, stating that the resource extraction must immediately cease to correct the violation. On 19 October 1998, Doty returned to the site only to find the extraction continuing. He then issued a $100 civil citation to Luther Roberts. Afterward, from October 20-22, 24, 26 and 27 of 1998, Doty observed trackhoes excavating and dump trucks removing the soil from the site. Doty issued four additional citations totaling $1100 and, on 30 October 1998, plaintiff Durham County requested a temporary restraining order, alleging defendants were violating the zoning ordinance and that Durham County would suffer immediate and irreparable injury, loss or damage. Plaintiff further requested a declaratory judgment, alleging defendants were engaged in the operation of resource extraction, as well as a $1200 money judgment for the five citations issued to defendants.

The temporary restraining order was granted and defendants were ordered to "cease all activities in connect[ion] with the operation of resource extraction in violation of the [various Durham ordinances.]" On 20 November 1998, the trial court issued a preliminary injunction, finding *inter alia*, that defendants had violated the Durham City/County Zoning Ordinance by engaging in resource extraction. The trial court concluded defendants knowingly engaged in the operation of resource extraction, as they were issued a notice of violation and several civil citations and that injunctive relief was appropriate. Luther Roberts was enjoined from further resource extraction or soil removal from the site.

Following the granting of the preliminary injunction, Sheila Roberts filed a motion on 24 November 1998 to modify the preliminary injunction to allow her to finish the two ponds on the site and have the extracted dirt transported to the landfill site. She noted she was the sole owner of the site and had never been served with any legal process connected to the action. She further stated that if the project, already half-finished, were left unfinished, she would suffer irreparable harm.

On 24 February 1999, Luther Roberts filed a motion to dismiss and an answer. He based his motion to dismiss on failure of service of process and failure to state a claim upon which relief can be granted. In his answer, Luther Roberts claimed the site was a "local historic site and [had] been used primarily for farming and agricultural purposes for decades." He contended the site was therefore exempt from the zoning ordinance because he was carrying on a bona fide farming and/or agricultural activity.

Defendant Sheila Roberts filed an answer on 23 April 1999, moving to dismiss based on insufficiency of process, insufficiency of service of process and failure to state a claim upon which relief can be granted. She also claimed her actions did not violate the zoning ordinance and were only permissible agricultural improvements.

On 3 December 1999, appellants, Kent and Linda Fogleman, Ralph Emory, Tony A. Fogleman, Ardis Geddings, Gerald and Judith Kendrick, and Carla, Steven and Daisy Wall, who owned real property adjacent to or in the vicinity of the site, filed a motion to intervene, stating the district regulations were designed to encourage the maintenance of the area's open and rural character. They further alleged the removal of the soil would disturb the quality of the district's drinking water. Intervenors filed an amended motion to intervene on 9 December 1999, adding: (1) the dump trucks created too much noise; (2) the dump trucks showered the area with dirt and dust; (3) defendants' illegal operation lowered the intervenors' property values; (4) intervenors had been advised that plaintiff would consent to defendants' actions; and (5) intervenors' interest thus could not be adequately represented by plaintiff. Intervenors filed a complaint requesting a permanent injunction such that defendants could not continue the extraction and could not sell the dirt to the State of North Carolina Department of Transportation under a settlement agreement. The motion to intervene was granted and, on 19 January 2000, the trial court filed a memorandum of decision and order.

In the order, the trial court found the soil extraction was not violative of the zoning ordinance because of an exemption set out in N.C. Gen. Stat. § 74-67, which provides in pertinent part:

The provisions of this Article shall not apply to those activities of the Department of Transportation, nor of any person, firm, or corporation acting under contract with said Department of Transportation, on highway rights-of-way or borrow pits main-

tained solely in connection with the construction, repair, and maintenance of the public road systems of North Carolina[.]

N.C. Gen. Stat. § 74-67 (1999). The trial court further found (1) excavating for the Durham landfill was not exempted; (2) the soil excavation and removal constituted "soil extraction" as defined by the zoning ordinance; (3) the project was for bona fide farm and agricultural purposes and; (4) it was therefore exempt from the zoning ordinance under N.C. Gen. Stat. § 153A-340, which provides that zoning regulations do not affect bona fide farms. The trial court then granted defendants' motion to dissolve the preliminary injunction.

Intervenors appeal the trial court's conclusion that the soil extraction is exempt from the zoning ordinance under N.C. Gen. Stat. § 153A-340, setting forth two assignments of error. Defendant Sheila Roberts moved to dismiss the intervenors' appeal due to an untimely filing and service of the transcript agreement, but was denied. Sheila Roberts then cross-appealed, setting forth one assignment of error.

[1] By intervenors' first assignment of error, they argue the trial court erred in concluding defendant's soil extraction operation constituted a bona fide farm purpose within the meaning of N.C. Gen. Stat. § 153A-340. We disagree.

The North Carolina General Statutes discuss the grant of power to counties via zoning regulations in section 153A-340(a). *See* N.C. Gen. Stat. § 153A-340(a) (1999). However, zoning regulations are limited in how they may affect lands used for bona fide farms. All bona fide farms, with the exception of swine farms, are exempt from zoning regulations. N.C. Gen. Stat. § 153A-340(b) (1999).

Bona fide farm purposes are defined in section 153A-340 as including "the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultural products having a domestic or foreign market." N.C. Gen. Stat. § 153A-340(b)(2) (1999). Intervenors contend "livestock" as used in the statute does not include raising horses.

We note livestock includes horses in several of our statutes. For example, the Livestock Dealer Licensing Act defines livestock as "cattle, sheep, goats, swine, horses and mules." N.C. Gen. Stat. § 106-418.8(2) (2000). Under Chapter 68's livestock law, "livestock" includes "equine animals, bovine animals, sheep, goats, llamas, and

swine." N.C. Gen. Stat. § 68-15 (2000). The Regulations of the Interstate Commerce Commission include horses in its rates applicable to "livestock." *See Schroader v. Railway Express Agency*, 237 N.C. 456, 75 S.E.2d 393 (1953). Under N.C. Gen. Stat. § 1-322, titled "Cost of Keeping Livestock," horses are listed. In the statutes criminalizing the pursuing or injuring of livestock with the intent to steal, and poisoning livestock, horses are the first of the listed animals in both statutes. *See* N.C. Gen. Stat. § 14-85 (2000); N.C. Gen. Stat. § 14-163 (2000). In the statute protecting livestock running at large, horses are also included. *See* N.C. Gen. Stat. § 14-367 (2000). Under the statutory registration and protection of livestock brands, "livestock" is defined as "cattle, horses, ponies, mules, and asses." N.C. Gen. Stat. § 80-58(d) (2000). The Sedimentation Pollution Control Act of 1973 defines "livestock" as including "beef cattle, llamas, sheep, swine, horses, ponies, mules, and goats." N.C. Gen. Stat. § 113A-52.01(1)(d) (2000).

Further, as the statute at issue is silent as to the definition of "livestock," the term must be given its ordinary meaning. Dictionaries define "livestock" as "[d]omestic animals, such as cattle or horses, raised for home use or for profit," and "[d]omestic animals used or raised on a farm." American Heritage Dictionary 737 (2d. Coll. Ed. 1985); Black's Law Dictionary 935 (6th ed. 1990). Therefore, there are ample instances in which horses are considered to be livestock and we hold that, in the instant case as well, horses are deemed livestock.

Intervenors next contend even if horses are "livestock," Sheila Roberts is not involved in the "production and activities relating or incidental to the production" of livestock, as is required in section 153A-340. Intervenors take the phrase "producing livestock" to mean defendant must breed horses for commercial uses. Sheila Roberts has clarified that she plans to breed and raise horses for the enjoyment of her family, not for commercial purposes. However, we find nothing in intervenors' brief to suggest why "breeding" horses is not "producing" them. "Produce" is not defined by the applicable statute. However, it is defined in a common dictionary as "[t]o bring forth; yield: *produce offspring.*" American Heritage College Dictionary 1091 (3d ed. 1997) (emphasis in original). We thus hold defendant's breeding and raising of horses for the benefit of herself and her family is the production of livestock.

Intervenors further contend the excavation was not necessary for defendant's purposes. However, that issue is not appropriately before

this Court. Intervenors cite no authority for this contention and appear to ask this Court to impose a requirement not present in the statute itself. This we refuse to do. Section 153A-340(b)(2) provides that the activity need only be "relating or incidental to" bona fide farm purposes, not "necessary and customary." It is clear that the activity undertaken by defendant was related and incidental to the farming activities of boarding, breeding, raising, pasturing and watering horses. Accordingly, this assignment of error is rejected. As we have already held defendant's activities fall under the bona fide farm purposes exception, we do not address intervenors' other concerns in connection with this issue.

[2] By their second assignment of error, intervenors argue the trial court erred in dissolving the preliminary injunction and in denying their request for a permanent injunction. We have held defendant's activities are bona fide farm purposes within the meaning of N.C. Gen. Stat. § 153A-340(b)(2) and exempt from the zoning ordinance. Therefore, no basis for injunctive relief exists. We accordingly reject this assignment of error.

[3] By her first and only cross-assignment of error, Sheila Roberts argues the trial court erred in concluding as a matter of law that the removal and excavation of soil constitutes "resource extraction" as that term is described under the Durham Zoning Ordinance.

None of the documents attached to defendant's brief in support of this contention were admitted at trial or otherwise included in the official record of this case. It is well established that this Court can judicially know only what appears in the record. *In re Warrick*, 1 N.C. App. 387, 390, 161 S.E.2d 630, 632 (1968). Further, concerns which are addressed in a brief, or exhibits in an appendix to the brief, which are outside the record will not be addressed. *Id.* Therefore, the external documents included in the appendix to defendant's brief are not considered here. Because defendant sets forth no case authority in the text of her argument, this assignment of error is deemed abandoned. *See* Joyner v. Adams, 97 N.C. App. 65, 387 S.E.2d 235 (1990).

For the reasons stated above, we affirm the trial court.

AFFIRMED.

Judges MARTIN and BIGGS concur.