INMAN, Judge.
*657 This appeal concerns the interpretation and application of a county zoning ordinance to firing ranges constructed on property without an approved site plan and permit. We hold that a Farm Identification Number obtained by property owners from the federal government prior to constructing firing ranges does not, as a matter of law, establish that operation of the ranges is a farm use exempt from zoning regulations. We also hold that because the county board of adjustment which first heard the matter failed to resolve material disputed issues of fact, we must vacate the orders below and remand for necessary findings of fact by the county board.
Cumberland County (the "County") appeals from a superior court's order reversing a decision by the Cumberland County Board of Adjustment (the "Board") affirming in part and modifying in part a Notice of Violations penalizing David Hampton and his wife, Mary Hampton (collectively the "Hamptons"), for violating the County's zoning ordinance by operating a firing range on their property without a site plan and permit. On appeal, the County argues that the superior court erred in construing certain exceptions to the ordinance in the Hamptons' favor. After careful review, we vacate and remand for proceedings consistent with this opinion.
I. Factual & Procedural Background
The record tends to show the following:
The Hamptons, both retired First Sergeants with the United States Army, purchased an approximately 74-acre tract of land in Cumberland County (the "Property") in September of 2011. The Property was zoned as rural residential. After purchasing the Property, they obtained a Farm Identification Number from the United States Department of Agriculture, Farm Services Agency. Per a letter presented by the Hamptons to the Board, they purchased the Property with the express intent to "build our final home, a running trail and firing/archery ranges...." Beyond the Hamptons' personal enjoyment, the firing ranges were to be constructed "for the purpose of teaching others the fundamentals of safe gun handling and marksmanship, and the maintenance of firearms proficiency." In a notarized letter to the Board, the Hamptons' real estate agent stated that the couple "made it clear to me from the outset that they have always planned to build ranges, so they could teach the use of firearms to others...." The Hamptons' ranges would not be open to the public, but instead would be available "by appointment-only" to "family, friends and those with similar interests...." In another *658 notarized letter submitted to the Board, a friend of the Hamptons stated that the ranges were made available to the Hamptons' "family, friends and formal students...."
The Hamptons started clearing land for the ranges in May of 2012 and built their first range, 25 yards in length, that summer. David Hampton then began using the range to instruct students in defensive handgun methods, rifle and carbine training, and tactical pistol use. The Hamptons expanded the 25-yard range to 40 yards and allowed their friends to use the range in the spring of 2013. In the summer of 2014, the Hamptons constructed a 100-yard firing range adjacent to the first range. David Hampton continued to provide training, including instruction in firing shotguns and tactical shooting techniques, *766 through the beginning of 2015. The Hamptons reported to the Board that they "introduced more than 30 people to the safe use of firearms, allowed 25 experienced shooters to increase their proficiency, and qualified another 26 persons for their North Carolina Concealed Carry Handgun Permit" over the course of approximately two years.
Although the use of firearms is integral to the facts of this case, our review involves only the interpretation and application of a zoning ordinance and related statutes. No argument concerning the application or legal relevance of the Second Amendment to the Constitution of the United States has been advanced by either party.
On 6 May 2015, in response to a report from a North Carolina Department of Environmental and Natural Resources official of an unauthorized firing range on the Property, a Cumberland County Code Enforcement Officer (the "Officer") obtained a warrant to inspect the Property. After inspecting the Property, the Officer issued a Notice of Violations to the Hamptons citing a lack of an approved site plan or permits required by the local zoning ordinance. The Notice of Violations ordered the Hamptons to raze the firing range.[1]
The Hamptons appealed the Notice of Violations to the Board. The Board conducted a quasi-judicial hearing on 20 August 2015. According to the procedure provided in the County Code, the Board heard sworn testimony from witnesses and received documentary evidence from the parties.[2] At the conclusion of the hearing, the Board voted to find *659 certain facts, to modify the corrective action in the Notice of Violations from removal of the range to "ceas[ing] any use of the firing range as it conflicts with the Cumberland County Ordinance[,]" and to affirm the Notice of Violations as modified. These findings and conclusions were memorialized in the Board's order dated 14 September 2015. The Board's order contains only the following eight findings of fact:
1. The Hamptons purchased the subject property September 26, 2011, and began construction of the firing range thereafter.
2. Mrs. Hampton testified that only a small berm had been constructed on the property in April 2013.
3. The Hamptons have continued to improve and expand the firing range until they were contacted by DENR in May 2015.
4. The Hamptons have not used the subject property for a residence but have obtained a permit to install a septic tank and intend to construct a dwelling on the property.
5. The use of the property for a firing range does not constitute a farm or a farm use on that portion of the property on which the firing range is constructed.
6. Section 107 of the Cumberland County Zoning Ordinance has required a zoning permit for any use of land since the amendments of June 20, 2005.
7. The Hamptons do not have a permit for the use of their property as a firing range.
8. The Hamptons have not applied for a permit for the use of their property as a firing range.
The Hamptons filed a Petition for Writ of Certiorari to the Cumberland County Superior Court on 2 October 2015 and filed an Amended Petition for Writ of Certiorari on 3 November 2015.[3]
*660 The Hamptons' amended petition challenged the Board's order on several grounds, alleging the Board failed to: (1) exclude certain *767 inadmissible evidence; (2) follow proper procedure in making findings of fact; and (3) provide the Hamptons with procedural due process. The Hamptons also alleged that the Board acted arbitrarily and capriciously, made findings without sufficient evidence, and made errors of law in its decision. The Hamptons petitioned the Cumberland County Superior Court to "remand this matter to the [Board], directing it to dismiss the Notice of Violation[s] and recognize the legal, non-conforming use of the [Property], inter alia , for the non-commercial use of the [Hamptons], their family and friends as a sport shooting range."
The superior court heard the Hamptons' appeal on 28 March 2016 and entered an order reversing the Board's decision and declaring that the Hamptons' "non-commercial use of the 100-yard range facility for target shooting and weapon sighting with family and friends is a legal use of their property." The superior court also made findings of fact not contained in the Board's order, including, among others, the following:
8. ... [The Hamptons] have used this portion of their homesite and farm for target practice and weapons sighting with family and friends....
9. No commercial activity has been involved in their personal use of this range.
...
14. The [Hamptons'] principal use of the subject property is for the [Hamptons'] home and farming operations.
15. The range is incidental to the enjoyment of the [Hamptons'] home and farm.
...
17. The [Hamptons'] ongoing and proposed use is to "shoot with family and friends[.]"
The superior court reversed the Board's decision for "errors at law in its legal interpretation" of the "occasional target practice" exception set forth in the zoning ordinance. The superior court also concluded that "any use of the property for a commercial firing range would subject the property to the permit requirements of the currently existing Firing Range Ordinance." The County timely appealed to this Court.
*661 II. Standard of Review
We review a trial court's legal conclusions concerning a board of adjustment's decision for errors of law. Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment , 365 N.C. 152, 155, 712 S.E.2d 868, 871 (2011). Appellate review of a trial court's interpretation of a zoning ordinance is conducted de novo , and we apply the same principles of construction utilized in interpreting statutes. Fort v. Cnty. of Cumberland , 235 N.C. App. 541, 549, 761 S.E.2d 744, 749 (2014). "Our review asks two questions: Did the trial court identify the appropriate standard of review, and, if so, did it properly apply that standard?" Morris Commc'ns Corp. , 365 N.C. at 155, 712 S.E.2d at 870 (citation omitted).
This Court has no authority to make findings of fact on appellate review. Nale v. Ethan Allen , 199 N.C. App. 511, 521, 682 S.E.2d 231, 238 (2009) ("It is not the role of the appellate courts to make findings of fact."). Similarly, a superior court reviewing a decision by a board of adjustment "is not the trier of fact but rather sits as an appellate court...." Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjustment , 334 N.C. 132, 136, 431 S.E.2d 183, 186 (1993) (emphasis added) (citations omitted). In so sitting, the superior court may determine only whether:
1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious.
Overton v. Camden Cnty. , 155 N.C. App. 391, 393, 574 S.E.2d 157, 159 (2002) (alterations in original) (quoting Capital Outdoor, Inc. v. Guilford Cnty. Bd. of Adjustment , 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002) (citation omitted)); see also N.C. Gen. Stat. §§ 153A-349 and 160A-393(k) (establishing the scope of review on appeals from a board of adjustment to superior court).
The superior court's standard of review of a board of adjustment's decision is *768 determined by the particular issues raised on appeal. "If a petitioner contends the [b]oard's decision was based on an error of law, 'de novo' review is proper." JWL Invs., Inc. v. Guilford Cnty. Bd. of Adjustment , 133 N.C. App. 426, 429, 515 S.E.2d 715, 717 (1999) (citation omitted). "When the petitioner 'questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole *662 record" test.' " ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C. , 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting In re Appeal by McCrary , 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) ).
When applying de novo review, the superior court interprets and applies the controlling law and substitutes its judgment for that of the board of adjustment. When applying the whole record test, the superior court examines all competent evidence in the record to determine whether the decision below was supported by the evidence. Myers Park Homeowners Ass'n v. City of Charlotte , 229 N.C. App. 204, 208, 747 S.E.2d 338, 342 (2013). When a petition for writ of certiorari from a board of adjustment decision involves both standards, the superior court should "apply both standards of review if required, but the standards should be applied separately to discrete issues." Blue Ridge Co., L.L.C. v. Town of Pineville , 188 N.C. App. 466, 470-71, 655 S.E.2d 843, 846 (2008) (citing Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner , 139 N.C. App. 269, 273-74, 533 S.E.2d 525, 528 (2000) ).
Section 160A-393(l ) of the North Carolina General Statutes provides that when reviewing a board of adjustment decision, the superior court "may affirm the decision, reverse the decision and remand the case with appropriate instructions, or remand the case for further proceedings." N.C. Gen. Stat. § 160A-393(l ). The statute provides specific procedures in the event the superior court does not affirm a board of adjustment's decision in its entirety:
If the court concludes that the decision by the decision-making board is ... based upon an error of law, then the court may remand the case with an order that directs the decision-making board to take whatever action should have been taken had the error not been committed or to take such other action as is necessary to correct the error.
N.C. Gen. Stat. § 160A-393(l )(3). Alternatively,
[i]f the court concludes that the decision-making board has erred by failing to make findings of fact such that the court cannot properly perform its function, then the court may remand the case with appropriate instructions so long as the record contains substantial competent evidence that could support the decision below with appropriate findings of fact.
N.C. Gen. Stat. § 160A-393(l )(2).
*663 Here, the superior court, per its order, reversed the Board's decision, concluding that the Board "made errors at law in its legal interpretation." The interpretation of a zoning ordinance is subject to de novo review by the superior court, Welter v. Rowan Cnty. Bd. of Comm'rs , 160 N.C. App. 358, 362, 585 S.E.2d 472, 476 (2003), which the superior court properly recognized in its order. We now address whether the superior court properly applied this standard.
III. Analysis
A. Applicable Sections of the Cumberland County Zoning Ordinance
In 2005, several years before the Hamptons purchased the Property, the County adopted a zoning ordinance section making it "unlawful to commence the ... use of any land or building ... until the [the County] issue[s] a zoning permit for such work or use." Cumberland Cnty., N.C., Zoning Ordinance § 107.
Since 2010, the County's ordinance has exempted from permitting requirements farm uses on a bona fide farm, provided that the property owners have received a United States Department of Agriculture Farm Identification Number. Cumberland Cnty., N.C., Zoning Ordinance § 109 (2010) (the "Farm Exemption"). However, the Farm Exemption expressly provides that "non-farm uses are subject to the provisions of [the *769 zoning] ordinance." Id. (emphasis added). This language tracks N.C. Gen. Stat. § 153A-340(b)(1) (2015), which exempts from zoning regulation "bona fide farm[s,]" provided the use in question is not for "nonfarm purposes." Our courts have acknowledged the qualified nature of this exemption. See, e.g., Sedman v. Rijdes , 127 N.C. App. 700, 703, 492 S.E.2d 620, 622 (1997) (noting that, under N.C. Gen. Stat. § 153A-340 (1991), "county zoning regulations may not affect bona fide farms, but any use of farm property for nonfarm purposes is subject to the regulations[,]" and observing that "[b]ona fide farm purposes" is defined under the statute as "includ[ing] the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultural products ..." (internal quotation marks omitted)); see also N.C. Gen. Stat. § 153A-340(b)(2) (2015) (defining bona fide farm purposes to "include the production and activities relating or incidental to the production of crops, grains, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agriculture, as defined in [N.C. Gen. Stat. §] 106-581.1"). *664 In April of 2011, several months before the Hamptons purchased the Property, the County Board of Commissioners (the "Commissioners") revised the zoning ordinance to provide:
All uses of property are allowed as a use by right except where this ordinance specifies otherwise or where this ordinance specifically prohibits the use. In the event, [sic] a use of property is proposed that is not addressed by the terms of this ordinance, the minimum ordinance standards for the use addressed by this ordinance that is most closely related to the land use impacts of the proposed use shall apply.
Cumberland Cnty., N.C., Zoning Ordinance § 402. In 2012, the County determined that standards for outdoor recreation "are the most similar and more closely address the land use impacts that would result from an outdoor firing range than any other use specific provisions in our ordinance."
On 17 June 2013, after the Hamptons had constructed one firing range on the Property, the Commissioners passed a Text Amendment (the "Firing Range Amendment") to the zoning ordinance specifically concerning the zoning and permitting of firing ranges, which added the following definition:
Firing Range, Outdoor: A facility, including its component shooting ranges, safety fans or shortfall zones, parking areas, all structures for classrooms; administrative offices, ammunition storage areas and other associated improvements, designed for the purpose of providing a place for the discharge of various types of firearms or the practice of archery. For purposes of this ordinance, outdoor firing ranges are a principal use of property and therefore, [sic] shall not be considered incidental or accessory. This ordinance is exclusive of occasional target practice by individuals on property owned or leased by the individuals, sighting of weapons for purposes of hunting, or temporary turkey shoots conducted on a property no more than 12 days in any calendar year .
Cumberland Cnty., N.C., Zoning Ordinance Text Amendment P11-20 (2013) (emphasis added).[4] The Firing Range Amendment also added *665 permitting requirements and restricted the operation of outdoor firing ranges to sites no smaller than 200 acres. Id.
The ordinance sections governing the Hamptons' firing ranges reflect a changing dynamic in the County's regulation of outdoor firing ranges and their exemption from regulation. At the time the Hamptons purchased the Property, no County ordinance expressly regulated firing ranges, so except with respect to farm uses, the Property was subject to permitting consistent with the most analogous land use ordinance standards. Since 17 June 2013, the operation of outdoor firing ranges in the County requires permitting unless the use is a farm use or *770 falls within one of the exceptions provided in the Firing Range Amendment. Therefore, the Firing Range Amendment provides additional exceptions from zoning regulation of outdoor firing ranges. The Board could not affirm the Notice of Violations without resolving factual disputes relating to these additional exceptions. As explained below, the Board failed to make necessary findings of fact regarding these exceptions and the superior court had no authority to make those necessary findings.
B. The Superior Court's Interpretation of Applicable Law
In interpreting the Firing Range Amendment, the superior court correctly noted that "[z]oning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they must be liberally construed in favor of such owner." See, e.g., In re W. P. Rose Builders' Supply Co. , 202 N.C. 496, ----, 163 S.E. 462, 464 (1932) ("Zoning ordinances are in derogation of the right of private property, and, where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner."); Coleman v. Town of Hillsborough , 173 N.C. App. 560, 564, 619 S.E.2d 555, 559 (2005) ("Zoning regulation is in derogation of common law property rights and therefore must be strictly construed to limit such derogation to that intended by the regulation." (citation omitted)).
The Hamptons argue that the superior court's interpretation of the Firing Range Amendment should be upheld because: (1) it harmonizes the Firing Range Amendment with a prior existing firearms ordinance; and (2) the distinction between commercial and non-commercial use-crafted by the superior court-aligns with the County's intent in passing the Firing Range Amendment.[5]
*666 The Hamptons' argument that the Firing Range Amendment must be harmonized with the County's firearms ordinance is misplaced. The firearms ordinance makes it unlawful to discharge a firearm within certain distances of various persons, places, and objects. Cumberland Cnty., N.C., Code of Ordinances § 9.5-100. While it is true that "[s]tatutes dealing with the same subject matter must be construed in pari materia and harmonized, if possible, to give effect to each[,]" Bd. of Adjustment of Town of Swansboro v. Town of Swansboro , 334 N.C. 421, 427, 432 S.E.2d 310, 313 (1993), the Firing Range Amendment and the firearms ordinance do not govern the same subject matter and are not in conflict.
The Firing Range Amendment governs the use of land; the firearms ordinance governs the use of firearms. The fact that a person may run afoul of one ordinance does not create a conflict with the other. By analogy, simply because a homeowner may lawfully operate a motor vehicle on her private property does not mean she is permitted to build a private racetrack in her backyard in contravention of a zoning ordinance.
The Hamptons argue that "for homeowners to comply with the provisions of the County's Firearms Ordinance, [they are not] require[d ] to own 200 acres of land[,] as [required by the] Amendment...." This is not a conflict. A homeowner can, as provided in the Firing Range Amendment, make "occasional" use of a firearm without meeting the Firing Range Amendment's criteria for permitting a firing range. A homeowner can more frequently use a firearm in many different places that he does not own-such as at a permitted firing range. Because the Firing Range Amendment and firearms ordinance do not concern the same subject matter and are not in conflict, this argument is without merit.
The County argues that the superior court erred in concluding that the Board misinterpreted the exemption in the Firing Range Amendment concerning "occasional target practice by individuals." The County also contends that the superior court improperly invalidated the Notice of Violations based on findings that the Hamptons engaged in non-commercial *771 use of the firing ranges "for target shooting and weapon sighting with family and friends," and erred in finding such use was "incidental to the[ir] enjoyment of the [Property]" such that the Hamptons were shielded by the County's Farm Exemption and N.C. Gen. Stat. § 153A-340(b)(1). The County directs our attention to evidence it contends shows that: (1) the Hamptons' use of the Property for firearms practice and training was routine and not occasional; (2) the ranges were not used for "target practice" but instead for formal training; and (3) the users were not limited to individuals owning or leasing the Property, or even their friends or family, but included formal students. *667 C. Unresolved Factual Issues Preclude Appellate Review
In urging this Court to reverse the superior court, the County overlooks and entreats this Court to make a critical error that we are unwilling to repeat: basing an appellate decision on facts not decided below. The Board made no findings as to how frequently the Hamptons or their invitees used firearms on the Property, whether the Property was used for target practice or formal firearms training, or who the Hamptons allowed to use the Property. Absent those material factual findings, we are unable to determine on appellate review: (1) how the Board interpreted the Farm Exemption, N.C. Gen. Stat. § 153A-340(b)(1), and the "occasional use" exception in the Firing Range Amendment; and (2) how the Board applied those interpretations to the facts before it. Nor should the superior court have made such a determination. We therefore must reverse the superior court-not because we disagree with its legal conclusions, but because it lacked the necessary factual findings to review the Board's decision.
Interpretation of a term in a zoning ordinance is a question of law. Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment , 202 N.C. App. 631, 636, 689 S.E.2d 880, 883 (2010), rev'd on other grounds , 365 N.C. 152, 712 S.E.2d 868 (2011). But whether the specific actions of a property owner fit within that interpretation is a question of fact. Id. at 636, 689 S.E.2d at 883 (holding that interpreting the term of a zoning ordinance is a question of law subject to de novo review but determining whether a party violated that interpretation is a question of fact subject to the whole record test); see also N.C. Dep't of Env't. and Natural Res. v. Carroll , 358 N.C. 649, 665-66, 599 S.E.2d 888, 898 (2004) (noting that whether a state employee engaged in certain acts is a question of fact and whether those acts constitute "just cause" for discipline under N.C. Gen. Stat. § 126-35 (2003) is a question of law). The mixed questions of fact and law disputed in this appeal stymy our review and precluded the superior court from engaging in a meaningful review.
Neither party argued to this Court that the Board's findings of fact were insufficient to allow meaningful appellate review. However, when a reviewing court determines that it cannot do its job without exceeding its limited jurisdiction to determine issues of law, rather than issues of fact, remand is the proper disposition. See, e.g., Coble v. Coble , 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980) ("Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support *668 findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.").
The superior court reversed the Board's decision on the basis that the Hamptons' conduct did not violate the zoning ordinance, even though the Board made no factual findings as to the Hamptons' conduct. While the superior court could interpret the ordinance on de novo review, absent factual findings by the Board regarding the Hamptons' conduct, the superior court could not find new facts to *772 reverse the Board's order and summarily invalidate the Notice of Violations.
The Firing Range Amendment's exception to the zoning ordinance allows firing ranges without a permit where the use is: (1) "occasional" (2) "target practice" (3) "by individuals on property owned or leased by the individuals[,]" but the trier of fact-the Board-made no findings as to any of these three factual elements. The same is true for the applicability of the Farm Exemption and N.C. Gen. Stat. § 153A-340(b)(1) : while the Board found that the Hamptons' use of the ranges "does not constitute a farm or a farm use[,]" it made no finding as to what the Hamptons' actual use was. We therefore cannot determine whether the Hamptons' conduct fell outside the exceptions such that the Notice of Violations was properly issued.
The superior court, by making its own factual findings, implicitly recognized the inadequacy of the findings made by the Board. Instead of remanding the case to the Board with instructions to make sufficient findings to allow for appellate review as provided by N.C. Gen. Stat. § 160A-393(l )(2), or remanding with the instructions necessary to correct an error of law as provided by N.C. Gen. Stat. § 160A-393(l )(3), the superior court overstepped its role as an appellate tribunal by making its own findings of fact regarding how the ranges were used and who used them. See Thompson v. Town of White Lake , --- N.C. App. ----, ----, 797 S.E.2d 346, 352-53 (2017) (reversing a superior court's order reviewing a board of adjustment's zoning decision because the superior court impermissibly made its own findings of fact); Deffet Rentals, Inc. v. City of Burlington , 27 N.C. App. 361, 363-64, 219 S.E.2d 223, 226 (1975) (vacating a superior court's order on writ of certiorari from a board of adjustment's decision on the grounds that "[t]he [superior] court is empowered to review errors in law but not facts.... It is not the function of the reviewing court, in such a proceeding, to find the facts *669 .... It follows that in the instant case the trial court was without authority to make findings of fact and conclusions of law thereon. In so doing, it committed error.").
N.C. Gen. Stat. § 160A-393(l )(2) states that "findings of fact are not necessary when the record sufficiently reveals the basis for the decision below or when the material facts are undisputed and the case presents only an issue of law." But here, the record reveals that facts material to the Board's decision were disputed. Specifically, the County introduced evidence that it contended showed that the Hamptons were advertising their range and firearms training,[6] while the Hamptons themselves introduced evidence showing that their use was not limited to family and friends but was extended to "formal students." This evidence raises issues of material fact as to the nature of the use of the Property relevant to an application of the Farm Exemption, N.C. Gen. Stat. § 153A-340(b)(1), and the exception in the Firing Range Amendment. The superior court impermissibly resolved these issues when it made findings of fact that no commercial activity occurred in connection with the ranges and that the Hamptons' use of the Property was limited to target practice and weapon sighting with family and friends. These factual issues were for the Board to resolve, not the superior court sitting as an appellate court.
The Board's order, however, did not resolve these factual disputes. The Board's order does not find-does not even mention-how often the ranges were used, what they were used for, or who used them. The Board's order does not mention any farming operations on the Property. Nor does the order mention the Farm Exemption, N.C. Gen. Stat. § 153A-340(b)(1), or the Firing Range Amendment's exception for occasional target practice or other exempt uses. The transcript of the Board's hearing reveals no indication from the Board members as to how they interpreted these exceptions; indeed, the Board members themselves made absolutely no reference to the Firing Range Amendment's exceptions or exemptions. During *773 the Board's discussion as to farm uses in their fact-finding deliberations, one member commented: "I think we need to make the fact for sure about the permit and the use of it as a firing range versus the farm. I think we really need to go on that ... I'm saying that they didn't submit for a permit for the firing range, but they did submit for the farm use. We need to make that as a facts [sic] finding." However, the Board did not include such a finding in its decision *670 and the record does not indicate how a majority of the Board's members would interpret the Farm Exemption or N.C. Gen. Stat. § 153A-340(b)(1) as applied in this matter.
The parties also disputed before the Board the nature of the Hamptons' use of the Property, including whether their use was commercial or non-commercial. A print-out of a website operated by the Hamptons advertising firearms training for $60 while offering "a climate-controlled classroom and ... our own ever-improving, private training facilities.... No range fees ...!" was admitted into evidence. The website print-out, which the Hamptons conceded accurately depicted their website, also advertised concealed carry courses, a practical carbine course, and a 100-yard range, which match both the training the Hamptons admitted to offering to users of their ranges and the length of one of the ranges on the Property. While the Hamptons on appeal challenge, without particular specificity, the admission by the Board of "testimony and exhibits" that were "incomplete or irrelevant[,]" the Board may rely "on evidence that would not be admissible under the rules of evidence as applied in the trial division of the General Court of Justice if (i) the evidence was admitted without objection or (ii) the evidence appears to be sufficiently trustworthy and was admitted under such circumstances that it was reasonable for the decision-making board to rely upon it." N.C. Gen. Stat. § 160A-393(k)(3). The Hamptons' counsel did not object to the introduction of the website print-out into evidence before the Board, and they admitted to its accuracy. As for the import of this evidence, that is for the Board-as the finder of fact-to decide in the first instance.[7]
While the parties made well-stated arguments in their briefs and at oral argument concerning whether the Firing Range Amendment is designed to prohibit commercial firing ranges rather than non-commercial ones, the absence of any findings of fact by the Board concerning that distinction's relevance to its decision means we may only hypothesize as to its import. Nor may we rely on factual findings made by the superior court to resolve the question, as they were made beyond its limited scope of review.
*671 Capricorn Equity Corp. , 334 N.C. at 136, 431 S.E.2d at 186 ("The superior court is not the trier of fact but rather sits as an appellate court...."). Unfortunately, we are unable to provide guidance under these circumstances, as "courts do not provide mere advisory opinions with respect to hypothetical situations." First-Citizens Bank & Trust Co. v. Barnes , 257 N.C. 274, 276, 125 S.E.2d 437, 439 (1962).
Our holding that the superior court erred by making its own findings of fact is compelled by binding precedent. See, e.g., Myers Park Homeowners Ass'n, Inc. , 229 N.C. App. at 214, 747 S.E.2d at 341 (affirming a superior court's denial, in a de novo review of a board of adjustment's order interpreting a zoning ordinance, of motions requesting additional findings of fact under Rules 52 and 59 of the North Carolina Rules of Civil Procedure on the basis that "the [s]uperior [c]ourt ... functions as an appellate court rather than a trier of fact" (internal quotation marks and citation omitted)); Capricorn Equity Corp. , 334 N.C. at 136, 431 S.E.2d at 186 (reversing, in an appeal from a superior court's review of a board of adjustment order, this Court's decision to remand to superior court for additional findings of fact on the basis that "[t]he superior court is not the trier of fact but rather sits as an appellate court.... [T]he Court of Appeals erred in *774 remanding this case to the superior court for findings of fact." (citations omitted)); Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Com'rs Town of Nags Head , 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980) (reversing an opinion of this Court that upheld a superior court's review of a quasi-judicial zoning decision partially because "[i]n proceedings of this nature, the superior court is not the trier of fact. Such is the function of the town board" (citation omitted)); Thompson , --- N.C. App. at ----, 797 S.E.2d at 352-53 ; Deffet Rentals, Inc. , 27 N.C. App. at 363-64, 219 S.E.2d at 226.
This Court has, in proper cases involving the appeal of local government zoning decisions to superior court, decided the merits of an issue irrespective of legal errors committed by the superior court in exercising its limited appellate review. Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner , 139 N.C. App. 269, 274, 533 S.E.2d 525, 528-29 (2000) (reversing and remanding to the trial court, and in turn to a municipal board, with direction to issue a conditional use permit where the whole record "fails to reflect that the Board's decision was sustained by 'substantial evidence[ ]' "). But in this case, we are hamstrung by the same problem that beset this Court in Welter : "[I]nterpretation by our Court of the portions of the zoning ordinance at issue in this case would not necessarily be dispositive of the case given the need for further findings of fact." 160 N.C. App. at 363-64, 585 S.E.2d at 477. In that case, we declined to adopt a particular interpretation of a zoning *672 ordinance and to resolve the case on appeal to this Court because "[i]f [a particular] interpretation were adopted, the case would not be disposed of because there is still an issue of fact as to whether [the petitioners conduct violated this interpretation].... [T]he findings [found] by the Board of Adjustment ... do not include sufficient findings of fact on this issue." Id. at 365, 585 S.E.2d at 477-78. The same is true here.
Our dissenting colleague asserts that two of the superior court's additional findings of fact were merely "summarizations of the un-contradicted evidence presented to the Board" and therefore did not constitute prejudicial error under Cannon v. Zoning Bd. of Adjustment of City of Wilmington , 65 N.C. App. 44, 47, 308 S.E.2d 735, 737 (1983). But the findings identified in the dissent-that the Hamptons' principal use of the Property was as a home and farming operation and that the range was incidental thereto-plainly contradict the Board's findings that "[t]he Hamptons have not used the subject property for a residence" and that "[t]he use of the property for a firing range does not constitute a farm or a farm use on that portion of the property on which the firing range is constructed."
Nor does any evidence in the record show that the use of the firing ranges was incidental to farming. The Hamptons stated to the Board that they had instructed 81 people in the use of firearms from 2013 through 2015, but they were not actively engaged in farming at the time of the hearing. The Officer who issued the Notice of Violation testified before the Board that he saw no timbering or farming activity taking place at the Property.
On this record, our colleague's reliance on Cannon is misplaced. In that case, the superior court's findings were "recitation[s] of largely uncontroverted evidence" that did not contradict any findings of fact made by the board of adjustment, were "unnecessary" to the decision, and, in fact, resulted in the superior court affirming the board's decision. 65 N.C. App. at 47, 308 S.E.2d at 737. We have since followed Cannon to hold that findings that merely "recite the [lower tribunal's] findings of fact and synthesize the evidence before [said lower tribunal]" do not constitute "prejudicial error." Cary Creek Ltd. P'ship v. Town of Cary , 207 N.C. App. 339, 342, 700 S.E.2d 80, 83 (2010) (citing Cannon , 65 N.C. App. at 47, 308 S.E.2d at 737 ) (affirming a superior court's affirmation of a town council's zoning decision). By contrast, this Court has consistently held that a superior court, sitting on appellate review of a board of adjustment's order, may not make findings of fact that contradict those made by the board as fact-finder, nor may it resolve factual questions that determine the outcome of the action. See supra Part III.C.
*673 The dissent also asserts that the Hamptons' acquisition of a federal Farm *775 Identification Number, alone, compels the conclusion that the use of the later constructed firing ranges was exempt from any and all zoning regulation under N.C. Gen. Stat. §§ 153A-340(b)(1)-(2) and the Farm Exemption. This reductive approach contradicts language in the statute and Farm Exemption and ignores longstanding precedent.
At the time this matter was decided by the trial court, state law provided that a Farm Identification Number constituted "sufficient evidence the property is being used for bona fide farm purposes." N.C. Gen. Stat. § 153A-340(b)(2).[8] But the statute, like the County Farm Exemption, provides a qualified exemption that applies only to farm related purposes . Id. Thus, to claim the benefit of the statute and the County Farm Exemption, the Hamptons needed to show two things: (1) that the Property was generally being used for bona fide farm purposes (by, for instance, obtaining a Farm Identification Number); and (2) that the actual use in question was a farm purpose. N.C. Gen. Stat. § 153A-340(b)(1) ("These regulations may affect property used for bona fide farm purposes only as provided in subdivision (3) of this subsection. This subsection does not limit regulation under this Part with respect to the use of farm property for nonfarm purposes.").
This two-step analysis has been applied by this Court for more than three decades.
In Sedman , we addressed the challenged construction and use of a driveway by large trucks to export plants from greenhouses, operation of large heaters and fans emitting a low frequency sound in connection with the greenhouses, and sale of flowers on farm property. 127 N.C. App. at 704, 492 S.E.2d at 622-23. Although it was undisputed that the greenhouse operation was a bona fide farm, an adjacent landowner sued for nuisance and alleged that the activities supplementing the greenhouse operation violated local zoning ordinances. Id. at 701-02, 492 S.E.2d at 621. In affirming partial summary judgment in favor of the farm owners, we held that the driveway and trucks were "so essential to large-scale agricultural production that their exclusion from the exemption would render it meaningless[,]" that the heaters and fans were "incidental to the *674 year-round raising of plants inside greenhouses[,]" and that the "s[ale] of products raised on the premises is also an exempt activity." Id. at 704, 492 S.E.2d at 622-23. Because the farm owners presented undisputed evidence about the challenged operations and their necessity to growing and selling plants, we held that the trial court did not err in granting partial summary judgment in favor of the farm owners on the issue of an alleged violation of a county zoning ordinance. Id. at 704-05, 492 S.E.2d at 622-23. Similarly, in County of Durham v. Roberts , 145 N.C. App. 665, 551 S.E.2d 494 (2001), we held not only that the defendant's breeding of horses was a bona fide farm use, but further held that excavation of the property was exempt from zoning regulations because "the activity undertaken by defendant was related and incidental to the farming activities of boarding, breeding, raising, pasturing and watering horses." 145 N.C. App. at 670-71, 551 S.E.2d at 498.
But non-farm uses, even on bona fide farms, are not exempt from zoning regulation. For this reason, this Court in North Iredell Neighbors for Rural Life v. Iredell County , 196 N.C. App. 68, 674 S.E.2d 436, disc. rev. denied, 363 N.C. 582, 682 S.E.2d 385 (2009), reversed a ruling by the trial court allowing biodiesel production on an industrial farm. 196 N.C. App. at 77, 674 S.E.2d at 442. The proposed biodiesel production would include gathering seeds grown by the farm owner and neighboring farmers, pressing oil from the seeds, and converting the oil to a combustible fuel. Id. at 76-77, 674 S.E.2d at 441-42. The trial court found that the proposed operation would produce 500,000 gallons of biodiesel fuel per year, of which 100,000 gallons would be consumed in *776 the farm's operation and excess fuel would be sold for use on other farms. Id. at 77, 674 S.E.2d at 442. This Court held that the trial court's findings did not support a conclusion that the biodiesel production was exempt from zoning regulations, and instead established a use which "removes this production from the realm of bona fide farm use to a non-farm independent commercial enterprise." Id. at 77, 674 S.E.2d at 442. We explained:
While the [landowners'] large scale industrial farming operation has certainly fit under the bona fide farm exception to date, this added industrial process, as they currently intend, is not 'the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultural products....' N.C. Gen. Stat. § 153A-340(b)(2). The [landowners'] intended biodiesel production is therefore subject to zoning.
Id. at 77, 674 S.E.2d at 442.
*675 In Baucom's Nursery Co. v. Mecklenburg County, N.C. , 62 N.C. App. 396, 303 S.E.2d 236 (1983), this Court addressed the interaction between Section 153A-340 and a county ordinance and acknowledged that zoning regulations apply, even on bona fide farms, to non-farm uses, adopting the hypothetical that "a used car lot upon an area of a farm would be a non-farm use made of farm properties" and therefore subject to regulation by zoning ordinances. 62 N.C. App. at 402, 303 S.E.2d at 240 (Braswell, J.) (internal quotation marks omitted).
Our dissenting colleague's assertion that the Hamptons' construction and operation of the firing ranges is as a matter of law exempt from county regulation simply because they obtained a Farm Identification Number is in direct conflict with the binding precedent of this Court's holding in North Iredell Neighbors for Rural Life , 196 N.C. App. at 77, 674 S.E.2d at 442. If processing seeds grown on a bona fide farm to produce biodiesel fuel on that farm is not exempt from zoning regulation, as we held in that decision, the Hampton's use of the Property for firing ranges, in the absence of any evidence that the ranges are incidental to any agricultural activity, surely cannot be exempt from zoning regulation as a matter of law.
We can certainly conceive of instances where a firing range could be incidental to bona fide farming purposes, such as training farmhands in the use of firearms in order to kill pests, varmints, or predators that threaten crops or livestock. Whether such a use or similar uses are demonstrated by the evidence in this case is for the Board to resolve on remand. But the logical extension of our dissenting colleague's analysis would allow the owner of a bona fide farm to engage in unlimited non-farm uses-such as weapons training or industrial manufacturing-as a matter of law based on possessing a Farm Identification Number.
Our holding does not ignore N.C. Gen. Stat. § 153A-340 's mandate that a Farm Identification Number "shall constitute sufficient evidence that the property is being used for bona fide farm purposes[.]" Rather, it recognizes that "sufficient evidence" does not equate to conclusive evidence. When sufficient evidence as to one conclusion is contradicted by sufficient evidence of the opposite, it is for the finder of fact to resolve the issue. See, e.g., Barker v. Mass. Mut. Life Ins. Co. , 168 N.C. 87, 87, 83 S.E. 16, 17 (1914) ("The evidence as to suicide ... while sufficient to justify an answer to the issue in favor of the defendant, ... was not conclusive, and the inference of an accidental killing could be accepted. If so, it was for the jury, and not his Honor, to draw the inference....");[9]
*676 State v. Sampson , 72 N.C. App. 461, 465, 325 S.E.2d 514, 517 (1985) ("While there may be sufficient evidence so that the trial court could have found the existence of those mitigating factors, we do not believe that the evidence so clearly establishes the fact in issue that no reasonable inference to the contrary can be found[.]").
On remand from the trial court, the Board must make findings as to the frequency of the use of the ranges and Property for shooting, who the Hamptons invited or permitted to shoot on the Property, and how the ranges *777 were in fact used. It must then determine whether the use falls within the Firing Range Amendment's exceptions for occasional target practice, weapon sighting for hunting, or turkey shoots, or other exceptions, or whether it constitutes a farm use not subject to zoning regulation under the Farm Exemption, N.C. Gen. Stat. § 153A-340, and N.C. Gen. Stat. § 106-581.1. On remand, "[t]he [Board] may in its discretion receive additional evidence and hear further argument from the parties, but is not required to do so." In re Appeal of Willis , 129 N.C. App. 499, 503, 500 S.E.2d 723, 727 (1998).
D. Alternative Arguments
The Hamptons mention in passing several alternative bases to affirm the order reversing the Board in their brief, contending: (1) they were prejudiced by the period of public comment at the Board's hearing; (2) the Board did not understand its adjudicative function; (3) the Board was biased against the Hamptons, resulting in an arbitrary and capricious decision; and (4) the Board impermissibly relied on the advice of counsel from the County Attorney's office. The superior court did not address these issues in its order, and we do not reach them.
Here, the Hamptons sit as appellees, not appellants, and seek to preserve the order of the superior court; it is understandable, then, that their brief and oral argument before this Court focused on issues that court did reach in its order and offered sparse legal analysis regarding the four issues enumerated above that it did not reach. Resolution of these issues by this Court at this stage would be limited to those arguments as stated in the parties' briefs. Bernold v. Bd. of Governors of Univ. of N.C. , 200 N.C. App. 295, 298, 683 S.E.2d 428, 430 (2009) ("This Court's task when reviewing a superior court's order reviewing an administrative decision is simply to consider those grounds for reversal or modification raised by the petitioner before the superior court and properly assigned as error and argued on appeal to this Court ." (emphasis added) (internal quotation marks and citations omitted)). The superior court, sitting as the first appellate court on a petition for writ of certiorari from any subsequent *677 order from the Board in this matter, is in a better position to consider any such arguments appropriately raised and presented to it on future review, and the interests of justice and fairness to the parties are better served by allowing full and complete argument, squarely presented, on these four additional issues above as they apply to any such future order and review thereof. See, e.g., Nw. Prop. Grp., LLC v. Town of Carrboro , 201 N.C. App. 449, 466, 687 S.E.2d 1, 12 (2009) ("Having concluded that the Board failed to make sufficient findings of fact ..., we do not believe that it is necessary or appropriate for us to address these issues at this time.... Having decided that the Board should make a new decision containing proper findings of fact ..., we should not presume ... that we are in a position to ascertain the exact nature of the factual findings that the Board will make .... As a result, we believe that the most appropriate course is for us to simply remand this case to the trial court for further remand to the Board for the making of a new decision that addresses all the issues ... and to leave the remaining issues that Petitioner has brought to our attention for decision on another day, assuming that those issues ever need to be decided." (internal citation omitted)).
While it is true that this Court may, in certain circumstances, resolve issues on appeal from a superior court's review of a board of adjustment's decision irrespective of the superior court's treatment of them, that is so only where such review would be dispositive and remand is therefore not automatic. Morris Commc'ns Corp. , 365 N.C. at 158-59, 712 S.E.2d at 872 ("Remand is not automatic when an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issue(s). Under such circumstances the appellate court can determine how the trial court should have decided the case upon application of the appropriate standards of review." (internal quotation marks and citations omitted) (emphasis in original)). We are not obligated to do so, however. N.C. Dep't of Env't. and Natural Res. , 358 N.C. at 665-675, 599 S.E.2d at 898-904 (acknowledging that "[o]rdinarily, when an agency fails to make a material finding of fact or resolve a material *778 conflict in the evidence, the case must be remanded to the agency for a proper finding" but electing to resolve the issues on appeal where doing so served "the interests of judicial economy and fairness to the parties ...").
As stated supra , remand in this case is automatic because material issues of fact must be resolved by the trier of fact (and not this appellate court) in order for us to fulfill our appellate function. Welter , 160 N.C. App. at 363-65, 585 S.E.2d at 477-78. The lack of sufficient finding of facts for meaningful appellate review undoubtedly impacts these other arguments. See, e.g., *678 Crist v. City of Jacksonville , 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998) ("Findings of fact are an important safeguard against arbitrary and capricious action by the Board of Adjustment because they establish a sufficient record upon which this Court can review the Board's decision." (citation omitted)).
IV. Conclusion
We vacate the decision of the superior court and remand with instructions to further remand the case to the Board for further findings of fact concerning how and how often the firing ranges were used, who the Hamptons allowed to use them, and, following application of those findings to the various zoning exceptions and exemptions at issue in this case, to determine whether those findings support a conclusion that the Hamptons violated the zoning ordinance sufficient to uphold the Notice of Violations. The Board may take additional evidence, or not, in its discretion.
VACATED AND REMANDED.
Judge CALABRIA concurs.
Judge TYSON dissents by separate opinion.

Although the Hamptons have constructed two component ranges, this opinion will refer to the entire operation as a single firing range, consistent with the language in the local ordinance, the Notice of Violations, and the proceedings below.

Fourteen members of the public who were not parties to the proceeding were also permitted to speak under oath to the Board in the course of the meeting.

The original and amended petitions were made "pursuant to N.C. Gen. Stat. § 153A-345.1 and § 160A-388 [.]" The superior court's order states the Hamptons' appeal was heard pursuant to the same statutes. These statutes govern hearings before boards of adjustment, not appeals therefrom. The superior court had jurisdiction to hear the Hamptons' appeal because N.C. Gen. Stat. §§ 153A-349 and 160A-393 (2015), et seq. , authorize appeals from orders of boards of adjustment to superior court by writ of certiorari.

In addition to the exception for occasional target practice, sighting of weapons, and temporary turkey shoots, the Firing Range Amendment provides a second exception for firing ranges in operation as of 20 June 2005. The Hamptons do not contend that the Property falls within this exception.

We do not reach the parties' arguments as to commercial and non-commercial uses for the reasons set forth infra, Part III.C.

The Hamptons contended before the Board that this website was unrelated to their activity on the Property. It is for the Board, as finder of fact, to resolve this conflict in the evidence. See, e.g., State v. Bromfield , 332 N.C. 24, 36, 418 S.E.2d 491, 497 (1992) ("[C]ontradictions in the evidence are for the finder of fact to resolve." (citation omitted)).

Our dissenting colleague asserts that the Hamptons' use of the ranges, if commercial, is akin to, among other things, "hay rides[,] corn mazes[, and] tractor pulls" and therefore may constitute a bona fide farm use. It is unclear to us, however, how use of the ranges to instruct individuals in defensive handgun methods, rifle and carbine training, tactical pistol use, tactical shooting techniques, and concealed carry handgun permit qualification involve and integrate farming in the same way as the activities that constitute agritourism under the statute.

The provision in N.C. Gen. Stat. § 153A-340(b)(2) concerning Farm Identification Numbers was repealed by the General Assembly effective 12 July 2017, and such a number alone no longer constitutes sufficient evidence that land is being used for bona fide farm purposes. 2017 N.C. Sess. Laws 2017-108. Each version of the statute, however, excludes from zoning regulation only those uses that constitute, relate to, or are incidental to "bona fide farm purposes[.]" Compare N.C. Gen. Stat. § 153A-340(b)(1) (2015) with 2017 N.C. Sess. Laws 2017-108.

This opinion was reprinted in 1936 at 168 N.C. 147.